## WHITNEY *vs.* SMITH & a.

An ancient plan, drawn at the time of executing a deed, showing the bearing
of the line betwixt the premises and an adjoining lot, is no evidence of such
line as against such adjoining owner or his grantee, unless their cognizance
of such plan, and assent to it, is first shown.

TRESPASS, for breaking and entering the plaintiff's close
situated in Nashua, and cutting down and carrying away
trees growing thereon. Plea, the general issue. It was
proved upon the trial that the plaintiff, and the defendant,
Smith, were the owners of adjoining closes, and the contro-
versy between the parties was as to the location of their di-
vision line. The plaintiff claimed title to the close describ-
ed in the declaration, under a deed from Hannah Brown to
Aaron Brown, dated February 25, 1797. The description of
the premises conveyed in said deed was as follows: " A par-
cel of land, being the same conveyed by Thomas Blanchard
to Gideon Honey by deed dated January 3, 1744."

The defendant, Smith, claimed title to the close adjoining
the plaintiff under a deed from Noah Lovewell to Benjamin
Smith, the defendant's father, dated December, 1784, in which
the west line of the premises therein conveyed, and which
is the line now in dispute, is described thus: " thence run-
ning southerly by Hannah Brown's land and land of Gideon
Honey, 58 rods, to land of Searles."

The defendants, for the purpose of proving to the jury how
the said line was understood, at the date of said deed from
Lovewell to Smith, to be located, offered a plan, upon which
the lines, courses, distances and monuments described cor-
responded with the description of the premises in the deed
from Lovewell to Smith ; and on said plan was written as a
date, the date of said deed.

The defendants offered to prove that the courses, descrip-
tion of monuments, and date written on said plan, and also
the deed from said Lovewell to Smith, were in the hand-

writing of one of the subscribing witnesses to said deed, and that the subscribing witness was much employed when living as a surveyor of land, and that he had been dead for many years. The defendants also offered to prove, by the affidavit of the party, Smith, that the said plan was in his father's possession before his death, which occurred twenty-two years ago, and was kept with, and had always accompanied said deed, and at the death of his father descended with the title deed to him as his father's heir.

Upon said plan the said west line of the defendant's close is represented to run S. 70° W. 58 rods, to Searle's corner, a black oak tree marked, which was proved on the trial to be an ancient and established monument.

The court rejected the said evidence; and a verdict having been returned for the plaintiff, the defendants moved, for this cause, to set the verdict aside and grant a new trial.

*Farley*, for the plaintiff.

*Clark, Sawyer, & J. U. Parker*, for the defendants.

UPHAM, J. The case finds that the plaintiff and defendants own land adjoining to each other, and the matter in controversy is as to the true location of the dividing line between them.

The plaintiff claims title from one Hannah Brown, and the defendants' land is described in a deed from Lovewell to Smith, executed in 1786, under whom the defendants claim, as "running from a certain monument *southerly* by land of said Hannah Brown to land of one Searles." The deed gives no bearing, or other description of the line betwixt the two lots. The location of the line is left to be determined entirely by extrinsic testimony.

To show how this line was understood to be at the time of the conveyance referred to, an ancient plan is offered in evidence, which appears to have been long kept with the de-

fendants' deed, giving the direction of the line as "south 70° west." From the evidence derived from this plan it would seem that Lovewell and Smith might have understood the line there specified, to be the true line ; but this does not preclude the rights of any other person.

The rule laid down upon this subject by Starkie is, that " maps and surveys of estates are evidence, when they appear to have been made with the privity and consent of the owner of the adjoining lands ; but it is clear that no entry or survey, taken by one owner, would be evidence for himself, or one claiming under him, against a party not claiming in privity—since it might encourage others to claim more than belonged to them." 1 *Stark. Ev.* 326.

All that is contended as to this plan may well be conceded —That it was first drafted in 1784, by a witness of the deed from Lovewell to Smith—was an actual survey of the land at that time, and that the deed was designed to convey the land in conformity to it. But, after conceding thus much, it may have been entirely an *ex parte* matter. The owner of the adjoining land may not have been present or cognizant of the survey in any manner whatsoever ; and may have been then, and his grantees may now be, able to show its total incorrectness as the true line betwixt the lots.

Its character, then, as tending to show an agreed or recognized line by adjoining owners, which is the only ground on which it can be received as evidence, utterly fails. The evidence, therefore, was properly rejected, and there must be entered

*Judgment on the verdict for the plaintiff.*