## STEIN *vs.* ASHBY.

24  521
q131 169

1. The City Court of Mobile has jurisdiction of an action on the case to recover damages for the diversion of the water of a running stream to the injury of plaintiff's mill privileges.
2. The use of the water of a running stream for nine years confers no right.
3. Stein v. Burden, p. 130, re-affirmed, as to the principle asserted in the first head-note.
4. The sustaining of a demurrer to a special plea, when the facts stated in it may be given in evidence under the general issue, is not an error for which the judgment will be reversed.
5. In an action on the case for damages to plaintiff's mill privileges, by the diversion of the water, it is not necessary to aver the manner or the means of the diversion.
6. It is sufficient, in such an action, to aver injury to plaintiff's mill privileges, without alleging the existence of a mill. The gist of the action being the invasion of the right, there need be no actual damage, when the act complained of is of such a character that its repetition or continuance might become the foundation of an adverse right.
7. When the course of a running stream through a fractional section prevents the sub-division of the quarter sections into eighty acre tracts, under the act of Congress of April 24, 1820, the sub-division of a quarter section by the United States' surveyor into two tracts divided by the stream, is not in contravention of the act.
8. Certain boundaries are of more importance than quantity in designating lands. Therefore, where a patent calls for a sub-division of a fractional quarter section, described as lying north of a certain creek and containing a specified number of acres, it embraces all the land in the sub-division north of the creek, although the actual number of acres exceeds the number specified in the patent.
9. Stein v. Burden, p. 130, re-affirmed, as to the principles stated in the third, seventh and eighth head-notes.
10. A map, not made under the authority of the State, or of the United States, although "generally received as a correct representation of what purports to be shown or described therein," is not admissible evidence.

ERROR to the City Court of Mobile.

Tried before the Hon. ALEX. MCKINSTRY.

ACTION ON THE CASE by George W. Ashby against Albert Stein, to recover damages for defendant's diversion of the water of Three Mile Creek to the injury of plaintiff's mill privileges. The manner in which, and the means by which

34

the diversion was effected, are not stated in the declaration, nor is there any averment of the existence of a mill in fact. The defendant first pleaded to the jurisdiction of the court: and a demurrer being sustained to this plea, he then pleaded the general issue and six special pleas, which are as follows:

"2. And for further plea in this behalf, defendant says *actio non ;* because, he says, the only piece or parcel of ground, and appurtenances, which plaintiff owns, or to which he has any right of possession, any where in the neighborhood of the Three Mile Creek, is the north-east fractional quarter section of section twelve, township four, in range two west, and that the said fractional quarter section does not lie adjoining to, nor bounded upon, nor touch, the said Three Mile Creek ; and that said piece or parcel of land which plaintiff claims, and has a right to the possession of, has, at no time, been injured by any act of defendant, by reason of his abstracting the water from said creek, or otherwise, nor has the value of said plaintiff 's lands been, in any wise, lessened, or the possession of the same injured or interrupted, by any act committed or omitted by said defendant ; and this he is ready to verify.

"3. And for further plea in this behalf, defendant, by leave of the court, pleads and says, that he and those under whom he claims have had, used, exercised and enjoyed the franchise or privilege of abstracting water from said Three Mile Creek, for more than twenty years next before the commencement of this suit, and from a point on said creek opposite to the lands claimed by said plaintiff, for the benefit of the inhabitants of Mobile, for which purpose alone he has used or abstracted said water ; and this he is ready to verify.

"4. And for further plea, defendant says, that he has had and held, used and enjoyed, the right and privilege of abstracting water from said creek, for the benefit of the inhabitants of Mobile, for more than nine years next before this suit was brought, and for the benefit of said inhabitants alone has he, at any time, taken and used said water ; and this he is ready to verify.

"5. And for further plea in this behalf, defendant says *actio non ;* because, he says, that heretofore, to-wit : on the

20th day of December, 1820, the Legislature of the State of Alabama passed an act, which was duly approved, entitled "an act to incorporate an aqueduct company in the City of Mobile," by which, amongst other things, Lewis Judson and others, corporators, were authorized to abstract and use the waters of said Three Mile Creek, for the use of the citizens and others residing in Mobile; and that afterwards, to-wit: on the 24th of December, 1834, the said corporators having failed to comply with the provisions of said act, the Legislature passed another act, which was duly approved, whereby, among other things, all the rights, privileges and immunities, appertaining to said company by virtue of said first named act, were transferred and vested in the corporation of the City of Mobile, for the use and benefit of the inhabitants thereof; and from that time, and for a long time thereafter, the said mayor and aldermen of Mobile held and enjoyed all the said rights and privileges conferred by the said last named act, to-wit: up to the 26th of December, 1840, when the said mayor, aldermen and common council, by agreement with him made, vested said defendant, among other things, with the right and privilege of abstracting water from said creek, and from a point opposite to the premises claimed by said plaintiff, for the use of the inhabitants of Mobile, for twenty years then next to elapse; which said contract, so made between said corporation and said defendant, was confirmed by an act of the Legislature, approved on the 17th of January, 1841, and said defendant was thereby vested with all the rights, powers, privileges and immunities which said corporation, before that time, possessed, used and enjoyed; and that this defendant, and said corporation under whom he claims, have had, used and enjoyed the privilege or franchise of abstracting water from said creek, from thence hitherto, and before the commencement of this action; and this he is ready to verify.

"6. And for further plea, defendant says *actio non*; because, he says, the only piece or parcel of land of which said plaintiff has any right of possession, or at any time has had, is the north-east quarter of section twelve, township four, range two west, and that the south-east quarter of said section, which lies south of said north-east quarter, is the

property of the corporate authorities of the City of Mobile, to which plaintiff has acquired no possession or right of possession, and from whom defendant has obtained the right to use the waters of said Three Mile Creek; and that said creek runs, and always has run and flowed south of said south-east quarter section, which intervenes between the plaintiff's possessions and said creek; and that defendant abstracts the water from no point on said creek, except at a point in section thirteen south of plaintiff's possessions, and that the abstraction of water from said last named point is no injury to plaintiff's possessions; and this he is ready to verify.

"7. And defendant further pleads, in short, by consent, that whatever trespasses or wrongs he has committed have been upon his own lands, and to his own injury alone, and that he had a right so to do."

There was a demurrer to the second, third, fourth, fifth, and sixth pleas; but the record nowhere shows what disposition was made of it.

On the trial, the plaintiff offered in evidence a patent from the United States to himself, for "sub-division north of Chatauque Creek, of the south-east quarter of section twelve, township four south, in range two west" (for a particular description of this patent see the opinion of the court); also, a plot or diagram, purporting to have been taken from the original survey by the United States' surveyor, of the lands described in the patent. He also proved, that he had been in possession, claiming title, since 1847; and introduced a map of the City of Mobile, made by Charles Delage, who was proved to be dead, and evidence tending to show that it was generally received as a correct representation of what purported to be shown or described therein. The defendant objected to the introduction of the map on this evidence; but his objection was overruled, and he excepted. Evidence was also adduced by the plaintiff, tending to show that said diagram was correct, and that said creek ran as there laid down; also, that there was a mill site on the land belonging to plaintiff.

The defendant then offered a patent from the United States to the City of Mobile, under whom he claimed, for "the south-east sub-division B of fractional section twelve, in township four south, range two west"; also, a map purporting to be a copy

of a survey by the United States' surveyor, showing the location of the land in the patent as corresponding with the diagram before given. He then introduced the agreement between himself and the City of Mobile set out in the fifth special plea, and the several acts of the Legislature referred to in said plea; and offered evidence tending to show that the creek did not run through the south east quarter section, as shown by the diagram introduced by the plaintiff, but ran south of the course therein marked through section thirteen.— The points which were made, as to the course of the creek through said quarter section, and what lands were conveyed by the patents, will be understood by referring to the charges of the court, in connection with the annexed diagram, in which the upper line ABC represents the course of the creek as laid down in the United States' survey, and the lower line AbC represents its course as proved by defendant's witnesses.

The court charged the jury as follows :

" 1. That if they believed that the United States intended by its patent to grant to the plaintiff all the lands lying on the north side of the creek in said south-east quarter of section twelve, and that it extended to the whole of the lands lying on the north side of the creek, then plaintiff is entitled to recover all the lands north of the creek down to the section line.

" 2. That if they were satisfied from the evidence, that there was no sub-division B, in fact, as laid down on the map introduced by defendant, but that the creek run down into section thirteen, as shown in the diagram, then the City of Mobile had no right, under its patent, to any land in section twelve north of the creek.

" 3. That under the act of 1820, incorporating the Mobile Aqueduct Company, and the subsequent acts relating thereto, the water could not be taken from said creek without compensation ; and that said acts were no defence to this action.

" 4. That no prescription will run, as to rights acquired thereby, against public lands owned by the Government of the United States.

" 5. That unless the water was taken by defendant and said City of Mobile, from some point either opposite to Ashby's lands, or above them, no right of prescription can avail against Ashby.

" 6. That the rights of the parties to this suit are to be regarded as those between private individuals, and not as involving a public benefit to the citizens of Mobile."

To all of these charges the defendant excepted, and asked the court to give the following charges :

" 1. That the statutes of Alabama enabling the defendant to effect a great and beneficial public object, ought to be benignly and liberally construed in his favor, and therefore he is not liable for any consequential damages done under and within the statutes above mentioned.

" 2. That to render defendant liable to damages at the suit of the plaintiff, the jury must be satisfied, from the evidence, that he has exceeded the powers conferred on him by the statutes establishing the City Water Works.

" 3. That the Legislature of Alabama having granted to the Mobile Aqueduct Company, in 1820, the right to use the waters of Three Mile Creek, to supply the City of Mobile with water, and defendant having succeeded to their rights by subsequent legislation, and Ashby having acquired titles to his lands from the United States, in 1850, after the grants made to the City of Mobile, he is bound by the acts of the Legislature granting exclusive privileges to the City of (Mobile and to said) defendant, and cannot contest said privileges."

Each one of these charges was refused, and the defendant excepted to the refusals ; and he now assigns for error all the rulings of the court, above set forth, to which exceptions were taken.

F. S. BLOUNT and C. W. RAPIER, for plaintiff in error.

JOHN T. TAYLOR, contra.

GOLDTHWAITE, J.—By the act of the 11th of February, 1848 (Pamphlet Acts 36), the City Court of Mobile was invested with the same jurisdiction as the County Court as to civil actions, By the act of 1807 (Clay's Digest 297 § 5), jurisdiction was given to the County Court, of all actions of a civil nature, excepting real actions, actions of ejectment, and trespass *quare clausum fregit* ; and by the act of 1819 it was provided, that the County Court should have concurrent jurisdiction with the Circuit Court in all actions of assumpsit, case, &c. (Clay's Dig. 297 § 7). The

fact that any of the actions may incidentally involve a question of title to real property, is not sufficient to deprive the court of jurisdiction, which was given to the County Courts by both the acts we have referred to. It is true, that we held in the case of Elliot v. Hall, 8 Ala. 508, that the term "trespass," as used in the act of 1819, must be confined to that action as, a remedy for injuries to personal property merely; and the reasoning of the judge who delivered the opinion in that case, indicates, that any action which involves an inquiry into titles to real property, was opposed to the spirit of the act. But to extend the doctrine thus far would cut off actions of assumpsit, debt, and covenant, for in all of these, the same question may incidentally arise. The plea to the jurisdiction was properly overruled.

Neither do we think that the court committed any error, which is available here, in sustaining the demurrers to the several pleas as shown by the record. The fourth plea is bad, as the use of water for nine years confers no right.

The fifth plea is also bad, upon the doctrine laid down by this court at the present term, in the case of Stein v. Burden, in which it was held, that the several acts of the Legislature referred to in this plea, conferred no right to the use of the water.

The facts pleaded in the other pleas, could all have been given in evidence under the general issue; and it is the rule in this court, that when that is the case, the sustaining of a demurrer to it is not an error for which this court will reverse.—Shehan v. Hampton, 8 Ala. 943.

It is urged, however, that the declaration is defective, in not showing how the defendant, Stein, diverted the water from the creek; and also, because the injury alleged was to the mill privileges, without averring the existence of a mill. The first objection we do not think can be sustained. There may be cases, in which a statement of the injury in general terms has been held bad (3 Leon. 13); but the correctness of this decision is evidently doubted by Mr. Chitty (2 Chit. Pl. (6 Amer. ed.) 790, n. n); and LeBlanc, J., in The Mersey & Irwell Nav. Co. v. Douglass, 2 East 490, says: "It would have been sufficient to have stated, that they diverted the water above the navigation of the plaintiffs; by means of

which the injury happened." See also Prickman v. Tripp, Skin. 389. In an action on the case for disturbing the right of common, it ᵢis not required to state the means.—Com. Dig., Actions on the case for Disturbance, B ; 1 Saund. 346, a ; 2 Black. Rep. 817 ; 3 Wils. 378. The strictness of the old rules, in relation to pleading, has been greatly relaxed, and courts at the present day do not lean to objections which cannot affect the substantial justice of the case. We are unable to perceive any good reason, why a distinction should exist between the mode of stating the injury in an action on the case for disturbance, and the same action for diverting water. We think the objection should not be sustained.

Neither is there anything in the other objection. The gist of the action is, the invasion of the right ; and whenever the act complained of is shown by the evidence to be of such a character as would admit, by its repetition or continuance, of the foundation of an adverse right, there need be no actual damage.—Parker v. Griswold, 17 Conn. 288 ; Stein v. Burden, at the present term.

On the trial, plaintiff below claimed under a patent from the U. States, which recited, that whereas George W. Ashby had deposited in the General Land Office of the United States a certificate of the register at the land office at St. Stephens, "whereby it appears that full payment has been made by said Ashby, according to the provisions of the act of Congress of 24th of April, 1820, entitled an 'act making further provisions for the sale of the public lands,' for sub-division north of Chatauque Creek, of the south-east quarter of section twelve, township south, of range two west, containing seventy-two $\frac{2\ 0}{1\ 0\ 0}$ acres according to the official plat of the survey of said lands, returned to the General Land Office by the Surveyor General ; which said tract has been purchased by the said George W. Ashby. Now know ye, that the United States of America, in consideration of the premises, and in conformity with the several acts of Congress in such case made and provided, have given and granted, and by these presents do give and grant, unto the said George W. Ashby, and to his heirs, the said tract above described ; to have and to hold the same, together with all the rights, privileges, immunities and appurtenances, of whatever

nature, thereunto belonging, unto the said George W. Ashby, his heirs and assigns forever. In testimony," &c.

Evidence was offered showing that the south-east quarter section, referred to in the patent, had been divided into two irregular subdivisions, making Chatauque Creek the dividing line; that the creek did not run through the quarter section, as is laid down in the map of the Surveyor General, but crossed the dividing line between sections twelve and thirteen, as shown by the diagram in the statement of the case.

The charge of the court was, that if the jury believed that the United States intended, by its patent, to grant to the plaintiff all the land lying on the north side of the creek, in the south-east quarter of section twelve, and that it extended to the whole of the lands on such north side, then Ashby was entitled to all the lands north of the creek down to the section line.

Regarding this charge as equivalent, under the circumstances, to instructions that the patent conveyed all the land in the quarter section north of the creek, we proceed to an examination of its correctness in that aspect.

It is insisted by the plaintiff in error, that the division of the quarter section, as made by the Surveyor General, was void, as being in contravention of the acts of Congress in relation to the survey of the public lands; and that the patent, calling for a sub-division thus made, was illegal and void.

The act of Congress referred to in the patent, is that of 24th April, 1820; and its provisions require, that fractional sections, containing upwards of one hundred and sixty acres, should be divided, as nearly as practicable, into half quarter sections, by running the lines north and south (2 Statutes at Large 566), and east and west, according to the instructions of the Secretary of the Treasury,—Public Land Laws, 2 Part 810.

Section twelve was a fractional section, containing more than one hundred and sixty acres; and whether the creek run through the south-east quarter, as is laid down in the plat of the Surveyor General, or as claimed by the plaintiff below, is entirely immaterial, so far as the present inquiry is concerned, as, in either event, that quarter section could

not be sub-divided as required by the act of 1820; nor could the sub-divisions, as made by the Surveyor General, affect the number of half quarter sections which could be carved out of the entire section. In sub-dividing the quarter section, and making the creek the line between the divisions, there was, therefore, nothing in contravention of the act of Congress referred to.

As to what the plaintiff took under his patent, that is equally clear. He had purchased the sub-division north of Chatauque Creek. The reference in the patent, as to the number of acres, was not intended to govern as to the land actually conveyed, but simply to inform the land officers as to the amount of purchase money to be paid by the buyer. The true rule, in relation to the construction of deeds and patents, is, that where a subject-matter is found which may satisfy either part of a repugnant or contradictory description, but not the whole, that part of the description must prevail which is presumed to express, with most certainty, the intention of the parties.—3 Cowen & Hill's Notes to Phil. Ev., 1378, and cases there cited. In designating lands, certain boundaries are of more importance than quantity (Wing v. Burgis, 1 Shep. (13 Maine) 111); and indeed, in the construction of grants, quantity is rarely material except where the boundaries are doubtful.—15 Johns. 472; 5 Mass. 355; 19 Wend. 175. Upon these principles, therefore, the plaintiff was entitled to all the land in the quarter section north of the creek; and if the charge was not substantially correct, it was not more favorable for the defendant in error than the law authorized.

The reasons we have given to sustain the first charge, are equally applicable to the second, and in that there was no error.

The legal questions involved in the other charges given and refused, are settled by the opinion of this court at the present term, in the case of Stein v. Burden; and the fourth and fifth charges assert principles whose correctness are so generally conceded and well settled, that it is deemed unnecessary to discuss them.

The only remaining question presented upon the record, is, as to the action of the court below in admitting the map made by Charles Delage. It does not appear that this map was

made either under the authority of the United States or this State; and the mere fact "that it was generally received as a correct representation of what purported to be shown or described therein," amounts to no more than if his statement, not under oath, as to the same facts, had generally been believed. Upon this evidence, it was improperly admitted; and for this error, the judgment is reversed, and the cause remanded.