98 So.2d 409

**J. Latt GOLDEN**

v.

**O. D. ROLLINS and Laura B. Rollins.**

**6 Div. 807.**

Supreme Court of Alabama.

June 20, 1957.

Rehearing Denied Nov. 21, 1957.

McEniry, McEniry & McEniry, Bessemer, for appellees.

Ross, Ross & Ross, Bessemer, for appellant.

COLEMAN, Justice.

This is the second appeal in this case. Golden v. Rollins, 259 Ala. 286, 66 So.2d 91. The questions decided on the former appeal are not involved here.

The appellees sued appellant in a statutory action to recover twelve acres of uniform width off the east side of southeast quarter of southeast quarter of Section 8, Township 18, Range 5, west, of the Huntsville Meridian.

After the former reversal, appellant (defendant) filed a boundary line suggestion, undertaking to describe the disputed line as claimed by him. Demurrer was sustained to appellant's first suggestion and also to his second suggestion; whereupon, he filed his third suggestion and appellees filed replication setting out the boundary line as contended for by them.

The lands of appellees lie on the east side of the southeast quarter of the southeast quarter of Section 8, supra, and the lands of the appellant lie on the west side of the southwest quarter of the southwest quarter of Section 9 of the same township and range. The disputed line, according to the respective deeds of the parties, is a part of the section line dividing the two sections, 8 and 9, above referred to.

The land in dispute as it appears from the record is a strip 29.7 feet wide from east to west, extending north from the southeast corner of Section 8, which is also the southwest corner of Section 9, for one quarter of a mile. The case was tried on the theory that one question in dispute to be decided by the jury was the location of the true line dividing said sections; and second, the issue of adverse possession of the disputed 29.7 feet wide strip.

The jury established the boundary line as contended for by the appellees, and the defendant has appealed to this court.

The transcript contains 374 pages followed by 86 assignments of error. Appellant's argument in brief does not clearly point out the errors insisted upon with all the certainty which might be desirable; but we proceed to consider the propositions which appear to merit discussion.

■ Appellant insists that error was committed in refusing the general charge with hypothesis requested by appellant under the theory that appellant had acquired title to the disputed strip by adverse possession. The evidence relating to possession of the disputed strip was in conflict, with substantial testimony supporting the contentions of both parties. Refusal of the general charge requested by appellant was not error.

Likewise, appellant's argument that the verdict was against the preponderance of the evidence is without merit.

■ Appellant argues that because certain members of the jury were employees of the Tennessee Coal, Iron and Railroad Company, these jurors were disqualified in this case and appellant is therefore entitled to a new trial. It is not shown that objection to the qualification of these jurors was made on that ground prior to the motion for a new trial. Moreover, the record fails to show that T. C. I. had any interest in the lands involved in this case, the minerals thereunder, or the result of this suit. This argument is without merit.

■ Appellant argues that the trial judge erred to a reversal in making certain statements during the cross-examination of Mrs. Wright, a witness for appellees, and in shaking hands with this witness in the presence of the jury immediately after a recess had been declared. We are of opinion that these actions of the trial judge did not constitute reversible error.

■ Appellant argues that over his objection, the witness Bennett, county surveyor, was erroneously permitted to testify as to what the original government survey showed with respect to dimensions of the sections of land here involved. In support of this insistence, appellant directs our attention to assignment of error 46 only, which recites as follows:

"46. The Trial Court erred in overruling the Appellant's objection to the following question propounded by the Appellee to the Appellee's witness, W. B. Bennett.

"Q. Now I will ask you if you had other notes of the Government relative to Section 8 and Section 9, and if you did have other notes tell the jury what

those notes were that you had and used? (Transcript Page 8)"

The question objected to does not call for information which the government notes or other records might contain, but merely asked the witness to tell what notes he "had and used." The objection to this question was properly overruled.

■ Appellant's first boundary line suggestion described the disputed line as follows:

"Commencing at the northwest corner of the SE quarter of SE quarter of Section 8, Township 18, Range 5 West, run thence in an Easterly direction along the North boundary line of said forty 1320 feet, more or less, to a round ¾ inch steel rod in the north boundary of said forty, for point of beginning, thence in a southerly direction along an old fence row to the north end of a barbed wire fence, thence in a Southerly direction along said barbed wire fence as the same now stands to a gulley at the south end of said barbed wire fence, thence continue in a southerly direction along a line marked by round ¾ inch steel rods to the center of Warrior River Road, a public paved road, which point in said road is the end of said true line. Situated in Jefferson County, Alabama."

This court has indicated that a description beginning at the true corner of a certain forty-acre subdivision described by government numbers is not *on its face* indefinite or uncertain.

"Of course, when the decree speaks of 'commencing at the Northwest corner of the SW¼ of SW¼ of said Section Eighteen,' it means, and can only mean, the true northwest corner of said forty-acre tract. Clarke v. Earnest, 224 Ala. 165, 139 So. 223. When that corner is established by a competent surveyor, as will be engaged by the sheriff, there will be no difficulty in locating and designating the strip of land. The decree in describing the

tract of land is not subject to the objection of being uncertain or indefinite, as urged by appellants' counsel." Smith v. Simmons, 228 Ala. 393, 395, 153 So. 633, 634.

In a later case, the description of a boundary line commencing at a corner of a forty-acre subdivision was said to be sufficiently certain *on its face*. In that case, however, the evidence showed that the corner set out in the description was, in fact, in dispute, and such a discription was disapproved. We quote from the opinion:

" * * * It is described in the suggestion, to paraphrase it, as commencing at the SE corner of NE¼ of NE¼, Section 2, supra, running thence north * * *.

" * * * There seems to be some controversy about the location of the starting point, to wit: the SE corner of NE¼ of NE¼, Section 2, supra. * * *

"The description as set out in the suggestion does not indicate that there was any controversy as to the location of the corner which is the starting point. So that on its face the description as there set out is not uncertain as to the starting point. Smith v. Simmons, 228 Ala. 393, 153 So. 633. But if there is a controversy about it as where surveyors place it at different locations, it should be described in the suggestion and judgment by monuments, distances and courses and not by reference to a survey, Millican v. Mintz [260 Ala. 22, 68 So.2d 702], supra; Forrester v. McFry, 229 Ala. 324, 157 So. 68, or other extraneous facts. Hopkins v. Duggar, 204 Ala. 626(5), 87 So. 103." Godsey v. Anglin, 261 Ala. 19, 21, 73 So.2d 92, 94.

In the instant case, it might be said that the description of the disputed line as set out in appellant's first suggestion is *on its face* sufficiently certain as against demurrer. The evidence does not indicate, as

we understand it, any dispute as to the location of the northwest corner of the southeast quarter of the southeast quarter of said Section 8. That corner, however, is not a point on the disputed boundary line. The description indicates that from that corner the surveyor should run 1320 feet, *more or less,* to a steel rod, which steel rod is the point of beginning of the disputed boundary line which appellant undertook to describe.

Plaintiffs' Exhibit 1 in this case indicates that at or near this point of beginning of the line thus described, two three-quarter inch iron pins appear in the ground. One of these pins is shown to be located on the line claimed by appellant and the other three-quarter inch iron pin is shown to be on the line claimed by appellees. A three-quarter inch iron pipe is also shown by said exhibit to be located on the ground some 25 feet from the two iron pins. In this state of the record, we are unwilling to hold the trial court in error for sustaining the demurrer to appellant's boundary line suggestion No. 1. If this suggestion had been permitted to go to the jury, and the jury found in favor of the appellant, a verdict and judgment describing the line as set out in that suggestion would be infected with the vice of uncertainty and indefiniteness because the surveyor or sheriff who undertook to mark the disputed line on the ground in accordance with that description would be faced with a choice between the three iron markers above referred to and would not be guided by the decree with sufficient certainty so as to determine the correct line on the land. In that situation, the judgment would be vague, indefinite and uncertain, and would render all these proceedings abortive and useless. There was no error in sustaining demurrer to appellant's suggestion No. 1.

Appellant's suggestion No. 2 also falls short of the certainty required in describing a boundary line.

As to a further proposition argued by appellant, however, we are of opinion that the trial court committed reversible error. Appellees offered in evidence Exhibit 2, which is a map or plat of Section 8, supra, and Exhibit 3, which is a similar map of Section 9, supra. These maps appear to have been drawn according to a survey made in 1910 and revised in 1919 by "W. H. Gwin, Ass't. Eng'r." This survey appears to have been made for the Tennessee Coal, Iron and Railroad Company, or U. S. Steel Corporation, in connection with ownership of mineral rights in lands in said sections. For aught that appears in the record, this was a private survey, made by these companies, or one of them, for their own purposes. W. H. Gwin did not testify and it appears probable that he was deceased at the time of the trial.

Appellant objected on the grounds that these exhibits had not been properly identified, were made by third parties, and are irrelevant, incompetent, illegal and immaterial testimony.

Nowhere does it appear that the appellant or his predecessors in title had any notice of or connection whatsoever with the survey made by Gwin or the exhibits based thereon.

Because of the admission of these exhibits in evidence and because they were allowed to go to the jury over appellant's objection and exception, we must determine whether it was error to admit them in evidence and whether or not appellant was injured thereby.

Our cases adopt the rule that a survey and a map based thereon are admissible in evidence where the county surveyor who made the survey and the map is shown to be qualified and is personally present in court, subject to cross-examination by the opposite party, and testifies as to the correctness of his map.

"A plat or map of lands surveyed by a county surveyor is not self-prov-

ing, or evidence per se, unless made upon notice to the parties, signed officially, and showing the matters prescribed by statute. Code 1923, § 10352. But the surveyor, shown to have experience as such, may testify as a witness to his survey, and its correctness, whereupon the plat may be offered in evidence in connection with his testimony. * * *" Hill v. Johnson, 214 Ala. 194, 196, 106 So. 814, 815.

Plats of land made by a county surveyor without notice to the party against whom the plat was offered in evidence, have been held admissible in evidence for certain purposes, where the surveyor was personally present in court, testifying, and available for cross-examination. Hess v. Rudder, 117 Ala. 525, 23 So. 136; Vandiver v. Vandiver, 115 Ala. 328, 22 So. 154.

As to an ex parte survey made without notice as provided by statute to the objecting party, or his privies, the rule is different when the surveyor is not personally present for cross-examination. The rule has been stated as follows:

" * * * Generally, private or statutory surveys are not admissible against one who, or whose privies, took no part therein, or had no notice thereof; * * *." 11 C.J.S. Boundaries § 114, Note 20; 9 C.J., page 284, Note 63.

"The objection, however, is, (as we understand it,) that the survey being *ex parte,* and not made in pursuance of an order of court, is not evidence. But the county surveyor is required by law to survey any land lying in his county, at the request of the owner. Clay's Dig. 353. And although such survey may not within itself be evidence, yet that the surveyor may be examined to prove the boundaries, and that he may illustrate his evidence by the survey so made, we entertain no doubt; and when the surveyor, by his own testimony, has proved the ac-

curacy of his survey, it then may go to the jury as testimony tending to prove the locality of the land and its boundaries. * * *" Nolin v. Parmer, 21 Ala. 66, 70, 71.

"The survey of the line of the fence, attempted to be offered in evidence on behalf of the defendant below, was not made by the county surveyor, the person appointed by law to make it. Rev. Code, §§ 947, 950, 953; Dailey v. Fountain, 35 Ala. 26. It was merely an *ex parte* examination of the disputed line of the fence, without any notice to the opposite party. Such a survey was incompetent for any purpose, against the party not participating in it. There was no error in rejecting it." Avary v. Searcy, 50 Ala. 54, 55, 56.

"The survey of the lands made by Barron, the county surveyor, notice of it not having been given to the appellee, was not, of itself, legal evidence. But it would be admissible, in connection with the evidence of the surveyor. * * *" Clements v. Pearce, 63 Ala. 284, 293.

Stein v. Ashby, 24 Ala. 521, involved a map in a situation similar to the instant case. There the plaintiff "introduced a map of the City of Mobile, made by Charles Delage, who was proved to be dead, and evidence tending to show that it was generally received as a correct representation of what purported to be shown or described therein. The defendant objected to the introduction of the map on this evidence; but his objection was overruled, and he excepted. Evidence was also adduced by the plaintiff, tending to show that said diagram was correct, and that said creek ran as there laid down; also, that there was a mill site on the land belonging to plaintiff."

Because of the admission of the map, this court reversed that case and, in discussing this error, said:

"The only remaining question presented upon the record, is, as to the ac-

tion of the court below in admitting the map made by Charles Delage. It does not appear that this map was made either under the authority of the United States or this State; and the mere fact 'that it was generally received as a correct representation of what purported to be shown or described therein,' amounts to no more than if his statement, not under oath, as to the same facts, had generally been believed. Upon this evidence, it was improperly admitted; and for this error, the judgment is reversed, and the cause remanded."

The foregoing case was cited by this court in an opinion in 1929, where it was said:

"It may be added that the evidence as to the map related to the matter of identification and not its correctness, and that, under the authority of Stein v. Ashby, 24 Ala. 521, was inadmissible for this reason also." Gulf, M. & N. R. Co. v. Pistole, 218 Ala. 695, 700, 120 So. 159, 163.

The following comment on Stein v. Ashby, supra, applies to the maps erroneously admitted in the instant case:

"The mere fact that a map of lands made upon an unofficial survey is testified to as generally recognized as a correct representation of w    it purports to show is not enough to make it admissible to show important details, even though the surveyor is known and is shown to have been competent. Such an authentication 'amounts to no more than if his statement, not under oath, as to the same facts, had generally been believed.' Stein v. Ashby, 1854, 24 Ala. 521. In such a case, it is to be noticed, the admission is not within the usual discretion of the court as to the use of a map as a chalk, and if material is reversible error." 9 A.L.R.2d 1083, § 19.

The jury's verdict established the boundary line as shown on Exhibits 2 and 3. The details shown on these exhibits are strongly persuasive of the correctness of the boundary line as claimed by appellees. Although there was other evidence supporting appellees' contentions, we cannot say the admission of these exhibits did not materially injure the appellant. For this error, the judgment must be reversed.

Other assignments of error are not sufficiently argued or probably will not arise on another trial.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, GOODWYN and MERRILL, JJ., concur.

On Application for Rehearing

■    On rehearing, able counsel for appellees earnestly argue that plaintiffs' Exhibits 2 and 3 were properly received in evidence as ancient documents.

We have carefully examined all cases cited in brief of appellees. Four cases there cited which we refer to here concern ancient maps.

In Hughes v. City of Tuscaloosa, 197 Ala. 592, 73 So. 90, the map admitted in evidence was a copy of an original map showing the town of Tuscaloosa as laid out by the United States Government. The opinion holds that an ancient map purporting to describe the property at the time of the grant was competent, and an ancient copy, according to which land had been conveyed for many years, was properly received in evidence.

In Ullman Bros. v. State, 16 Ala.App. 526, 79 So. 625, an ancient map made pursuant to a legislative act was held admissible.

In Hamilton v. Town of Warrior, 215 Ala. 670, 112 So. 136, an ancient map was held admissible where the objecting party claimed under a muniment of title which described his lot according to the ancient map to which the party objected.

In Barker v. Mobile Electric Co., 173 Ala. 28, 55 So. 364, an ancient map made by one

employed by the City of Mobile to lay out a map of the city was held properly admitted.

In annotated cases 1916C, page 176, and in 46 A.L.R.2d 1309, may be found annotations under the subject:

"Admissibility in evidence of ancient maps and the like."

The latter annotation states:

"In general, maps are said to be either official or unofficial in origin, while surveys are referred to as being either public or private." 46 A.L.R.2d 1319;

and at page 1320:

"An exception to the general rule which requires maps, surveys, and the like, to be authenticated by the testimony of the party making the same exists where the documents are ancient. Maps, surveys, etc., purporting to be thirty years old or more are said to prove themselves and are admissible in evidence without the ordinary requirements as to proof of execution or handwriting if relevant to the inquiry, when produced from proper custody, on their face free from suspicion, and authorized or recognized as official documents."

and at page 1322:

"An original map, over thirty years old, found in proper custody, authorized or recognized as an official document, and free on its face of suspicion, is admissible in evidence as an 'ancient document' to prove the location of a boundary line."

The Alabama cases cited above are in accord with the quoted rule, except Hamilton v. Town of Warrior, where the map was referred to by documents in the party's chain of title.

The annotation states with reference to unofficial or private maps and surveys:

"An ancient map made under the direction of a private person, or one for which no official authorization or recognition appears, is inadmissible in evidence." 46 A.L.R.2d 1333.

"An ancient survey which appears to have been made for a private purpose, and not officially authorized or recognized, is inadmissible as an ancient document." 46 A.L.R.2d 1338.

From the authorities cited in support of the foregoing statements of the rule, we quote the following pertinent excerpts:

Connecticut (1858)—"* * * The question pertained wholly to the location of the dividing line between the land of the plaintiffs and that of the defendant. * * *

* * * * * *

"The sketch or map, offered in evidence by the defendant, was properly rejected by the court. It is true that it appears to have been made by a competent surveyor, * * * but for what purpose, and on what occasion, does not appear; and whether it was made from an actual survey of the land, or the facts contained in it were collected from the contents of deeds and other documents, cannot be known. * * * Nor did it appear that it was made at the request of any person interested in that estate, or at the instance of any person who had any interest in the land of which it purported to be a description. It clearly could not be received as in the nature of an admission by any former proprietor of the land, because it was not shown that any such proprietor ever had any knowledge of its existence; and being found in the custody of a stranger, there could be no presumption that any former proprietor ever saw it, much less, that it was ever recognized as a correct map of the property. * * * and it would be going further than we have any authority for doing to receive

it as evidence in the case." Free **v.** James, 27 Conn. 77, 79.

Georgia (1906)—"The court admitted in evidence what purported to be a map embracing the property in dispute; * * *. By an entry thereon it purported to have been made by one J. H. Carter, in 1859. There was no evidence that Carter was county surveyor, or that he made the map under authority of any law or order of court. Nor was there anything to indicate at whose instance the map was made. Nor was there any evidence that it was correct. J. E. Donalson, Esq., testified that Potter, who at one time had an interest in the property embraced therein, gave the map to him for the reason that he had an interest in the property. * * * There was also evidence that the map had been recorded. * * * It is contended that as this map appears to be more than 30 years old, and there is nothing suspicious in its appearance, it is prima facie admissible. There was no evidence as to the age of the map, except the date thereon and the evidence of Donalson. * * * the mere date on the map, without evidence as to who placed it there, would not be evidence of its age, even if the rule admitting a map 30 years old applies at all to private maps. * * * The error in admitting this evidence was vital. The plaintiff does not claim ownership by paper title. * * * If he has title to the property in dispute, it results from constructive possession only, and this constructive possession will not avail him unless at the time he went into possession the land in dispute was embraced in one tract. The effect of the map was to show that it was not one tract. While the other errors committed might not have been sufficient to require the granting of a new trial, we think this error demands a reversal of the judgment." Bower v. Cohen, 126 Ga. 35, 39, 40, 54 S.E. 918, 920.

New Hampshire (1838)—"The case finds that the plaintiff and defendants own land adjoining to each other, and the matter in controversy is as to the true location of the dividing line between them.

* * * * * *

"To show how this line was understood to be at the time of the conveyance referred to, an ancient plan is offered in evidence, which appears to have been long kept with the defendants' deed, * * *.

"The rule laid down upon this subject by Starkie is, that 'maps and surveys of estates are evidence, when they appear to have been made with the privity and consent of the owner of the adjoining lands; but it is clear that no entry or survey, taken by one owner, would be evidence for himself, or one claiming under him, against a party not claiming in privity—since it might encourage others to claim more than belonged to them.' * * *

"All that is contended as to this plan may well be conceded—That it was first drafted in 1784, by a witness of the deed from Lovewell to Smith—was an actual survey of the land at that time, and that the deed was designed to convey the land in conformity to it. But, after conceding thus much, it may have been entirely an *ex parte* matter. The owner of the adjoining land may not have been present or cognizant of the survey in any manner whatsoever; and may have been then, and his grantees may now be, able to show its total incorrectness as the true line betwixt the lots.

" * * * The evidence, therefore, was properly rejected, * * *." Whitney v. Smith, 10 N.H. 43, 44, 45.

In an Ohio case, decided in 1954, the summary at the beginning of the report recites in pertinent part as follows:

" * * * The Supreme Court, Middleton, J., held that where there was

no showing that intersecting highways had been widened beyond their originally established width, and where plaintiff, whose deed used highways as boundaries, had, with his predecessors in title, occupied and used land to edges of highways as originally established, plaintiff's title would be quieted against claim that plaintiff was encroaching on highways." Broadsword v. Kauer, 161 Ohio St. 524, 120 N.E.2d 111, 46 A.L.R.2d 1309;

and the opinion contains the following pertinent statement:

"Although ancient maps are held in high regard by the courts, not every ancient map is admissible in evidence. One well recognized rule is that an ancient map made by a private person, or as to which no official authorization or recognition appears, is inadmissible. * * *" Broadsword v. Kauer, supra, 120 N.E.2d at page 114.

One of the headnotes in a Pennsylvania case, decided in 1902, recites as follows:

"*It seems* that an ancient plan found amongst a miscellaneous mass of papers in the surveyor general's office at Harrisburg, and not signed by the owner of the land or by any other person for him, is not admissible as evidence in a proceeding to determine the location of streets, since it appears that the plan was not an official paper made by any regular officer, that it was not filed in the proper place, and that it was not a survey adopted by the land office. * * *" Washington Female Seminary v. Washington Borough, 18 Pa.Super. 555, 556.

Another text on evidence contains the following statement:

"An ancient survey made by competent authority, recorded or accepted as a public document and produced from proper custody, is admissible in evidence to prove the location of a boundary line. But a map made under the direction of a private person, or one for which no official authorization or recognition appears, is not admissible regardless of age. Similarly, an ancient survey which does not appear to have been officially authorized, or which appears to have been made for a private purpose, is inadmissible. * * *" Jones Commentaries on Evidence, Second Edition, Vol. 3, § 1112, page 2048.

American Jurisprudence states the rule excluding private ancient surveys as follows:

"It is generally recognized that an ancient map, in proper custody, authorized or recognized as an official document, is admissible in evidence to prove the location of a boundary. * * * An ancient map, however, made by a private person, or for which no official authorization or recognition appears, is inadmissible as a general rule, though this obviously does not apply to a map in the nature of an unofficial plat made by a surveyor for one subdividing a tract which is admissible to show the boundaries in the subdivisions, at least where referred to in deeds subsequently executed." 8 Am. Jur., Boundaries, § 103, p. 820.

The reason for not admitting ancient private surveys has been stated as follows:

"But on the question whether the survey itself be competent evidence for the Plaintiff, the Court is of opinion that it is inadmissible, as being a private memorial procured to be made by Starkey for his own convenience, and is not evidence for him, or for any one who claims through him. The reason for excluding such evidence is decisive, viz. that it might benefit men to include in such surveys more than belonged to them. * * *" Jones v. Huggins, 1 Dev.L. 223, 12 N.C. 223, 17 Am.Dec. 567.

The reason for admitting maps or surveys which have official authorization or recognition has been stated as follows:

"* * * The ground on which a survey made by officers of the Crown under a commission is received, is, that it is presumed that they acted in accordance with their public duty, and have stated nothing in their inquisition or survey which is contrary to the fact. * * *" Daniel v. Wilkin, 7 Exch. 429, 437, 155 Eng.Reprint 1016.

Sweigart v. Richards, 8 Pa. 436, 438, 439, contains a statement contrary to the general rule. There the court said:

"* * * The *title* to lands cannot be acquired or established by unofficial diagrams, drafts, or surveys. But such papers may often be extremely useful in fixing and designating doubtful boundaries. It has been an ancient custom of the courts to receive them in evidence for what they are worth, in illustrating a question of boundary. * * *"

We comment briefly on the three cases cited in that opinion to support the foregoing statement.

(1) In McCormick v. McMurtrie, 4 Watts, Pa., 192, 193, the opinion states:

"* * * But in this, we think, there was no error. The field notes, *and other official proceedings* of the deputy surveyor, have always been admitted * * *." (Emphasis supplied.)

The holding that *official* proceedings are admissible is not authority for holding that *unofficial* proceedings are admissible.

(2) In Nieman v. Ward, 1 Watts & S., Pa., 68, 78, it was said that reputation and hearsay are such evidence as is entitled to respect in a question of boundary where the lapse of time is so great as to render it difficult to prove the original landmarks. In that case, the opinion states as follows:

"* * * Ramsey's survey having been shown to have been made in July 1774, *in pursuance of a warrant* granted to him by the commonwealth * * * must be regarded as an ancient survey. In 1784 *it was returned into the surveyor general's* office; * * *" (Emphasis supplied.)

The statement from Nieman v. Ward, supra, which is quoted in Sweigart v. Richards, supra, was not made with reference to the survey but was made with reference to the trial court's instructions to the jury.

(3) In the third case cited in Sweigart v. Richards, supra, Payne v. Craft, 7 Watts & S., Pa., 458, 461, 462, in referring to the survey admitted in evidence in that case, the opinion recites:

"* * * A general draft of adjoining lands, *certified from the Surveyor General's office,* has been admitted in evidence too often to be now questioned, for the purpose of showing location and boundary. And the same may be said of the field-notes taken or made by deputy-surveyors, showing surveys to have been made by them on the ground. * * *" (Emphasis supplied.)

Our conclusion is that the decision in Sweigart v. Richards, supra, is correct because the survey there held admissible was public or official in nature. The statement that unofficial surveys are admissible on questions of boundary, however, appears to be dicta not supported by the authorities cited.

In Billingsley v. Bates, 30 Ala. 376, 379, the opinion recites in pertinent part:

"* * * it is for the jury to ascertain * * * at what precise point the disputed or lost corner was placed * * *. And to enable the jury to perform their duty intelligently, *any evidence,* whether parol or written, may be submitted to them, which has any natural or reasonable tendency to

show where that corner was placed * * * in the original survey. * * *" (Emphasis supplied.)

Nothing is said in that case about ancient surveys or ancient maps. The case was reversed for an erroneous charge given to the jury by the trial court.

The statement that "any evidence" reasonably tending to locate a corner may be submitted to the jury cannot be taken in its widest, literal sense. Such a sense would make admissible a recent ex parte survey, without the surveyor who made it or any other witness to prove its correctness. Appellees concede such a recent survey would not be admissible in the absence of authenticating testimony. Neither can such a broad statement make an ancient survey admissible unless the ancient survey is legal and competent evidence.

Appellees' Exhibits 2 and 3 which we held inadmissible, show no signature and no certificate. The names "W. H. Gwin, Ass't. Eng'r." and "F. M. Joy, Chief Engineer, Land Dep't." and also the following statement: "Revised by W. H. Gwin, Nov. 1919, as to Closure of Section only.," appear on the maps in draftsman's lettering. Also on the face of the maps appear the following words:

"All Interests } U. S. Steel Corpora-
"Mineral Interests } tion"

Outside of this lettering, nothing appears on the face of the maps to show who made them or for whom they were made.

The maps were received in evidence on the testimony of W. B. Bennett, who testified that he had recently been appointed "as a county surveyor for the Bessemer cut-off," that he opened his office in Bessemer in 1946, "as an individual and professional land surveyor."

The witness, Bennett, testified that it is usual and customary for surveyors to ac-

cept the T. C. I. Company's surveys relative to section corners in Sections 8 and 9, Township 18, South, Range 5 West, and Exhibits 2 and 3 were thereupon received in evidence over the objection of the appellant.

On cross-examination, Bennett testified that he requested and received the maps from the "Tennessee Company Engineering Department." When asked " * * * if it is not common understanding that this Tennessee survey was made to find the limits of the mineral land between the Tennessee Company, the Woodward Company, and Republic Company here in this district primarily?", Bennett replied: "I am not familiar with why they made this survey."

Mrs. Wright testified that she saw certain stakes after they had been placed on the land near the disputed line about 1910. She testified further that the line established by those stakes was recognized as correct by one of the appellant's predecessors in title. That testimony, based on the personal knowledge of the witness, was properly admitted. She testified further, however, that she did not see Gwin make the survey or set the stakes. Her testimony is in nowise connected with Exhibits 2 or 3, and does not suffice to make them admissible in evidence.

The maps are dated August, 1910. Nowhere else in the record is there any evidence as to when the maps came into existence. Wigmore on Evidence states the following rule:

"The period of thirty years signifies of course the period in which the specific document has been *in existence*. The *purporting* date is of itself not determinative; for anybody may have forged the written date but yesterday. Accordingly this existence of the document thirty years ago must be somehow shown." Wigmore on Evidence, 3rd Edition, § 2138(3).

The evidence does not explain why or how Exhibits 2 and 3 were revised in 1919, or what changes, if any, were thereby made.

On the face of each exhibit in three conspicuous places appears the following statement:

"The accuracy of any information contained hereon is in no wise guaranteed."

We cannot avoid the conclusion that the foregoing statement is at least a suggestion that the detailed information set out in the maps may be inaccurate. While there is no intimation whatsoever in the evidence that Exhibits 2 and 3 have been fully changed, we are of opinion that in fraudulently altered or in anywise wrong- this case where a relatively small distance of 29.7 feet is the matter in issue, a map purporting to delineate an entire section ought not to bear on its face any suggestion of inaccuracy if that map is to be admitted as an ancient document to prove a distance less than thirty feet. The rule admitting ancient documents requires that the document be on its face free from suspicion. This court has said:

"* * * In the absence of proof of its execution, before a deed at least 30 years old is admissible in evidence as an ancient document, it must not only be found in the proper custody, but must be unblemished by alteration, and otherwise 'without marks of suspicion attached to it,' and 'having nothing suspicious about it.' * * *" McMillan v. Aiken, 205 Ala. 35, 39, 88 So. 135, 138.

Exhibits 2 and 3 are private surveys and have no official character. They do not qualify under the ancient document rule.

Opinion extended. Application overruled.

LIVINGSTON, C. J., and LAWSON, GOODWYN and MERRILL, JJ., concur.