## NOLIN vs. PARMER.

1. The boundaries of sections of land have been fixed, and their lines and corners marked, by the Government of the United States, and the boundaries thus marked and established, cannot be altered or controlled by any other survey; but the lines run to divide the sections into halves and quarters, if erroneous, may be corrected; for they are subdivided by law, and if the officer, in running the subdivision line, makes a mistake, it can be corrected by running the line according to law.

2. Although an *ex parte* survey, made by a county surveyor without an order of court, may not within itself be evidence, yet the surveyor may be examined personally to prove the boundaries of the land, and may illustrate his evidence by his own survey; and when the surveyor, by his own testimony, has proved the accuracy of his survey, it may then go to the jury, as testimony tending to prove the locality of the land and its boundaries.

3. The parol testimony of the surveyor in such case is admissible, although he testifies that all his knowledge respecting the boundaries of the land was derived from the survey which he had made.

ERROR to the Circuit Court of Barbour.

Tried before the Hon JNO. GILL SHORTER.

BELSER & RICE, for plaintiff in error:

1. The United States, in providing for the survey of the public domain, have established rules by which all disputes that may arise about boundaries, or the contents of any section or sub-division of a section, shall be ascertained. In the case of sections, the Government has arranged their bounda-

ries, marked their lines and corners, and declared their contents; and the purchaser of an entire section takes all within those limits, be it more or less than the quantity returned by the surveyor.

But, in the purchase of a less quantity, (of only eighty acres, as in this case), the contents of the several parts of the section must be determined with reference to the entire section; and the purchaser of one-eighth of a section is entitled to one-eighth of whatever the section contains; especially if it does not appear that the contents of such subdivision has been returned by the surveyor general. Walters v. Commons, 2 Porter, 38.

2. The county surveyor of each county of this State is a lawful officer, whose powers and duties are prescribed by law. Among other duties assigned to him by law, the following are here pointed out: "To make all surveys of lands lying in the county of which he is surveyor, and to which the United States have no claims, at the request of the owners or proprietors thereof; and, generally, to do whatsoever in the re-surveying, measuring and dividing of lands, may be required of him, by any person wishing the same done;" * * * * * "whenever called on for that purpose, to re-survey, and re-mark and bound any tract of land in his county," &c. &c., "taking special care, in all such cases, to be governed by the original surveys, patents or title deeds of such tracts; and the said surveyor shall make a plain report and certificate of all such re-marks and boundaries," &c. &c. Clay's Dig. 523, §1 to 7 inclusive.

3. A survey of an eighty acre tract of land, in the county of Barbour, by the county surveyor of that county, "honestly and fairly made, according to the best of his skill and knowledge, for the purpose of ascertaining the boundaries of said land," and duly proved by the surveyor himself, as a witness, on the trial of an action of trespass to try titles as to said land, is admissible evidence.

It is not a mere private survey, or survey made by an unofficial or private person. It is an official act, done in the strict and honest performance of a duty imposed by law upon the officer. And although made "*ex parte*," that is, "at the request of plaintiff," and without notice to the defendant,

still, it was official, and authorized by the statute. The law presumes that this officer, as well as every other, did his duty, and, therefore, that his survey was "governed by the original surveys and patent" of the tract. Parsons v. Boyd, 20 Ala.

4. The survey of the county surveyor was not offered to vary, control or contradict the original survey or the patent, but it was offered, in connexion with the positive testimony of the surveyor, to show the boundaries of the land in dispute, and that "the lands in dispute, and on which said trespasses complained of was committed, were embraced by plaintiff's patent." The testimony of the surveyor himself, aside from his survey, was competent, and should not have been excluded.

5. The testimony was admitted in the first instance without objection by the defendant; and "on cross-examination of the witness, (the surveyor,) he said, that all he knew of said lands, or its boundaries, was derived from said survey, made at the request of plaintiff." "Whereupon defendant moved to exclude said evidence, which was done."

The only objection made to this evidence is thus shown, by the record, to have been the fact stated by the surveyor, "that all he knew of said lands, or its boundaries, was derived from said survey." The objection being thus confined to one ground, was an admission by defendant, that, in all other respects, the testimony was competent. Creagh v. Savage, 9 Ala. 959.

6. It certainly was no valid objection to the admissibility of the survey itself, or the testimony of the surveyor, that his knowledge of said lands and its boundaries was derived from said survey. The statement itself, that "all he knew" was derived from the survey, necessarily implies, that, from surveying of the land, he had acquired a knowledge of the land and its boundaries; and if he had knowledge on these subjects, the testimony was clearly admissible. His testimony was the more weighty, if he derived his knowledge from the survey made by himself. How else could more satisfactory knowledge of boundaries be obtained than by a survey made honestly and fairly, with distinct reference to plaintiff's patent, and "for the purpose of ascertaining the boundaries" of the land in dispute—the eighty acre tract?

P. T. SAYRE, *contra:*

The bill of exceptions shows, that an attempt was made to prove an *ex parte* original survey, run by McKinney at the request of the plaintiff in error.

The title to the land was derived from the Government of the United States, and the court judicially knows that all lands sold by the General Government were surveyed prior to their sale.

All persons who purchase lands of the United States, take them according to the official survey, and are bound by the lines run by the United States' surveyor.

In all controversies, therefore, respecting lands purchased of the United States, it is not competent to prove any other survey, any other lines, or any other monuments, than those run and erected by the United States' surveyor. These can be proved by the official returns of the surveyor general, or by parol, by any one knowing them. But McKinney was not introduced for that purpose. His testimony proved nothing in reference to the United States' survey. He was offered to establish a private survey which he himself had made at the request of the plaintiff in error.

The fact to be established, was, that the lands sued for were embraced by plaintiff's patent, according to the official survey made by the United States' surveyor, and it made no sort of difference whether they were so embraced by McKinney's survey or not.

The rights of the parties were ascertained and fixed by the survey of the United States' surveyor before the purchasing of the lands, and they could not be affected by any subsequent survey.

The original survey was binding on the parties and the world, and their rights could only be established by a proof of the original survey. Surget v. Little, 5 Smedes & M. 319; May v. Baskin, 12 ib. 428; Jones v. Huggins, 1 Devereaux, 223.

The declaration shows that the lands claimed were sub-divisions according to the laws of the United States.

DARGAN, C. J.—This was an action of trespass, brought to recover possession of the following described land: the

east half · of the north-east quarter of section twenty-six, township ten, range twenty-seven, situated in the county of Barbour. To show title to the land, the plaintiff introduced a patent from the Government of the United States, by which the land above described was granted to him. To identify the land, and prove that the defendant was in possession, the plaintiff introduced John McKinney, the county surveyor, who had surveyed the land at the plaintiff's request, but without any order of court, and without notice to the defendant. This witness proved the survey which he had made, and also, that, according to such survey, the land in dispute was embraced by the plaintiff's patent. Upon cross-examination, he stated, that all the knowledge he had respecting the boundaries of the land, was derived from the survey which he had made. The defendant then moved the court to exclude his testimony, which was done, and the plaintiff excepted.

As respects sections of lands, the Government of the United States have fixed their boundaries, and marked their corners and lines, and it is clear that these boundaries, thus marked and established, cannot be altered or controlled by any other survey. But the lines run to divide the sections into halves and quarters, if erroneous, may be corrected, for they are sub-divided by law; and if the officer, in running the sub-division line, makes a mistake, it can be corrected by running the line according to law. Walters v. Commons, 2 Porter, 38. But the Government of the United States has never run any lines for the purpose of dividing quarter sections into half quarter sections, but has simply prescribed how the quarter section should be divided. When, therefore, the question is to locate a half quarter section, or to prove the line that separates the two half quarters, how can it be done but by a survey? The answer must be, that the land must be surveyed in accordance with the lines and boundaries of the section; and if this is done correctly, the particular land can be ascertained beyond doubt.

The objection, however, is, (as we understand it,) that the survey being *ex parte*, and not made in pursuance of an order of court, is not evidence. But the county surveyor is required by law to survey any land lying in his county, at

the request of the owner. Clay's Dig. 353. And although such survey may not within itself be evidence, yet that the surveyor may be examined to prove the boundaries, and that he may illustrate his evidence by the survey so made, we entertain no doubt; and when the surveyor, by his own testimony, has proved the accuracy of his survey, it then may go to the jury as testimony tending to prove the locality of the land and its boundaries. When the question is, to ascertain the thing granted, or to apply the grant to its proper object, parol proof is always admissible, and the witness on the stand may, (if he can,) by way of illustrating his evidence, draw a plat or a diagram of the land, showing its locality and boundaries. None of the authorities referred to by the defendant's counsel deny this proposition; and we think it clear, that if he may do so, even on the stand, the survey which he is required to make by law may be used for this purpose.

But, it is again contended, that the parol evidence was inadmissible, because the witness said that all the knowledge he had respecting the boundaries of the land was derived from the survey which he had made. But we do not understand from this, that the witness intended to say, that all his knowledge was derived from the paper he held in his hand, representing the survey, but, rather, that his knowledge of the boundaries arose from the survey he had made: that is, by going on the ground and running the lines, he was enabled, at the time he was testifying, to describe the land sued for, and to speak of its boundaries. The language of the bill of exceptions does not convey the idea, that the witness' knowledge was derived from the figures or representations made by him on paper, but, rather, that his knowledge was derived from the fact that he had surveyed the land.

In any point of view we are able to take of this case, we think the court erred in rejecting the evidence, and the judgment must be reversed, and the cause remanded.