(130 So. 537)

## POUNDERS v. NIX.

### 8 Div. 166.

Supreme Court of Alabama.

April 17, 1930.

As Modified on Denial of Rehearing Oct. 30, 1930.

H. H. Hamilton, of Russellville, for appellant.

J. Foy Guin, of Russellville, for appellee.

BROWN, J.

Appellee Nix brought statutory ejectment against appellant to recover possession of the west half of the northwest quarter of section 35, township 7, range 12 west, situated in Franklin county, Ala.

The defendant, who owned the adjoining tract east of the land described, filed a plea of disclaimer, and as authorized by section 7457 of the Code 1923, made suggestion in writing that the suit arose over a disputed boundary line, describing the location of the line as "beginning at the northeast corner of Section 34, Tp. 7, Range 12, west, in Franklin County, Alabama, at a corner stone which is the corner of said section according to the Government survey, and running south 4° 9' E, to the southeast corner of said section, according to the Government survey, said line being more particularly described as follows: Beginning at the northeast corner of Section 34, Tp. 7, R. 12, and running south 4° 9' E, according to a certain survey recently made by I. T. Jackson, following stobs which were placed or planted by said Jackson, and passing what is known as Taylor Spring, at a point where there was at the time of said survey a plank placed immediately east of or near the water edge in said spring, on the

east side and at a point where said surveyor marked said plank, and thence south by stobs or stakes as were placed or planted by said Jackson to the southeast corner of said quarter section, thence south to S. E. corner of said section."

The plaintiff did not take issue on the defendant's plea disclaiming possession, but filed a replication to the suggestion as to the location of the boundary line, asserting: "That the true boundary line between the west ½ of N. W. ¼ Sec. 35, Tp. 7, Rg. 12, belonging to plaintiff, and the East ½ of N. E. ¼ Sec. 34, T. 7, Rg. 12, belonging to defendant, begins at the common northerly corner of said sections 34 and 35, as averred in the answer, and runs south 4 degrees, 9 minutes East, as stated in said answer, but plaintiff avers that said true boundary line crosses the spring, running across the middle of the spring, which spring is formed by the streams flowing from the ground, leaving one of said three streams on plaintiff's side of said true boundary line, and one of said three streams on defendant's side of said true boundary line, the third stream being as the line."

The defendant's suggestion and the replication filed thereto by the plaintiff were in compliance with the statute, Code of 1923, § 7457, which provides inter alia: "The defendant may * * * file his suggestion in writing that the suit arises over a disputed boundary line, in which suggestion he shall describe the location of the true line and thereupon the plaintiff shall take issue, or shall reply in writing in which replication he shall set forth his contention as to the location of the true line, and the court or jury trying the issue shall ascertain the true location of the boundary line, and judgment shall be rendered accordingly, and order the sheriff to establish and mark the true line as ascertained, and in such case the costs shall be apportioned justly and equitably."

Interpreting the pleadings in the light of the statute, it clearly appears that the parties are agreed that the section line between sections 34 and 35, township 9, range 7 west, is the true line, and that the sole controversy between the parties is as to the location of the line where it passes the spring; that is, whether it passes immediately east of the spring at the water's edge, or at or near the center of the spring.

■ This issue, like any other issue, is due to be determined on evidence introduced by the parties to support the averments of their respective pleadings, and this is true notwithstanding the well-settled principle that section lines established by government surveys "cannot be altered or controlled by any other survey." Code 1923, § 7457; Nolin v. Parmer, 21 Ala. 66; Mixon v. Pennington, 204 Ala. 347, 85 So. 562, 563.

■ The purpose of the evidence showing a survey by Jackson, the county surveyor, at the request of one of the parties, the other being present, was not to contradict or control the government survey, but to aid the court and jury in determining the issue as to the location of the section line at or near the spring. That such evidence is admissible for such purpose is recognized, if not in fact affirmed, in Nolin v. Parmer, and Mixon v. Pennington, supra.

In the first-cited case, the court, speaking of an ex parte survey made by a county surveyor, observed: "Although such survey may not within itself be evidence, yet that the surveyor may be examined to prove the boundaries, and that he may illustrate his evidence by the survey so made, we entertain no doubt; and when the surveyor, by his own testimony, has proved the accuracy of his survey, it then may go to the jury as testimony tending to prove the locality of the land and its boundaries." Nolin v. Parmer, 21 Ala. 71.

And in Mixon v. Pennington, the court after a statement of the pleadings, proceeded to state their effect, as follows:

"It will be observed that the issue thus formulated called for the location of a line fixed by the government survey, nothing more, and that the question of title was not an issue. * * * It may be further said in this connection that there was no difference between the parties, or their respective surveyors, as to the location of the northeast corner of section 31; the difference was in locating the line between the northeast and northwest corners, the divergence between their respective lines amounting to 77 yards at the range line on the west."

Further on in the opinion, treating questions of evidence: "The court does not consider that the refusal to exclude this testimony was reversible error. The witness did not pretend to be able to locate the line in dispute. His testimony only tended to show that more than 20 years previously some one had run a line practically as described in the testimony of Crawford, who had testified that he ran his line in 1899, marking it by 'chops' on trees and by putting down stobs along the line of the government survey. This evidence of the witness Teal tended to support the defendant's claim that the line to which he claimed was the true, or government, line. And it was peculiarly appropriate that this testimony should be submitted to the jury because it tended to corroborate the testimony of defendant's witness Crawford, whom plaintiff had sought to discredit by testimony tending to show that he (Crawford) had run a crooked line—a line to suit his client rather than the historical fact."

■ The authorities are agreed, in such controversies, that any testimony tending to show

the location of the line as established by the government survey is admissible, and the parties are not limited to the expediency of having the line established by a surveyor. "In cases of disputed boundary, all evidence, whether documentary or parol, which bears upon the point in issue and which is not inadmissible on general principles, may be received in evidence, including records of original proprietors, their plans and maps and the location of lands by ancient settlers." 4 R. C. L. p. 121, §§ 61, 62, 63, 64, and 65; Deal et al. v. Hubert et al., 209 Ala. 18, 95 So. 349; Mixon v. Pennington, 204 Ala. 347, 85 So. 562; Hess v. Rudder, 117 Ala. 525, 23 So. 136, 67 Am. St. Rep. 182; Vandiver v. Vandiver, 115 Ala. 328, 22 So. 154; Garrison v. Glass, 139 Ala. 512, 36 So. 725; Aldrich Mining Co. v. Pearce, 192 Ala. 195, 68 So. 900; Smith v. Bachus, 195 Ala. 8, 70 So. 261.

And, "Where the location of *section lines*, or their subsidiaries, is in dispute, a witness who is not an expert surveyor may testify to existing and visible lines and monuments which have been adopted or assented to by adjacent owners, but he cannot, upon such knowledge alone, give his opinion as to what is the true line." Deal v. Hubert et al., 209 Ala. 18, 95 So. 349, 350. [Italics supplied].

When the stated principles are applied, many of the assignments of error based upon rulings on evidence appear clearly without merit.

However, what Joe Burrow, plaintiff's immediate predecessor in title, said to plaintiff in the absence of defendant, as to the location of the line, was res inter alios acta, and the objection thereto should have been sustained. Deal et al. v. Hubert et al., supra; Wade v. Gilmer, 186 Ala. 524, 64 So. 611.

And the evidence, admitted over the timely objection of the defendant, going to show that defendant tore down the plaintiff's fence, the value of the fence, the fact that plaintiff's stock got out, that defendant afterwards built a fence around the spring and enclosed it with his land, that the spring was in plaintiff's pasture, and that was the only place the stock had to get water, and that plaintiff had to carry water for his stock, and other related facts, was wholly immaterial to the issues, and its tendency was to divert the minds of the jury from the issues being tried, and to prejudice the jury against the defendant.

The statutes regulating the taxation of costs in the trial of causes, generally, apply equally to cases of this character, and the provision found in section 7457, that the court shall "order the sheriff to establish and mark the true line as ascertained, and in such case the costs shall be apportioned justly and equitably," relate to the costs and expense

of "establishing and marking out the line by the sheriff." Oliver v. Oliver, 187 Ala. 340, 65 So. 373.

For the error pointed out above, the judgment was properly reversed, and the application is therefore overruled.

ANDERSON, C. J., and GARDNER, BOULDIN, and FOSTER, JJ., concur.

SAYRE and THOMAS, JJ., concurring in the result.

SAYRE, J. (concurring in the result).

Statutory action in the nature of an action of ejectment. The controversy between the parties involved only the proper location of the line, according to government survey, between W. ½ of N. W. ¼, section 35, township 7, range 12 west, in Franklin county, owned by plaintiff (appellee), and E. ½ of N. E. ¼, section 34, in the same township and range, the property of defendant. This was shown by the plea and replication. Both pleadings start the line between the coterminous owners, plaintiff and defendant, at the northeast corner of section 34, the same being the northwest corner of section 35. Likewise both pleadings describe the line as running south, four degrees and nine minutes east. However, the real issue between the parties relates to the use and ownership of a spring on or close to the line, and hence defendant's disclaimer—to employ the language of section 7457 of the Code to which the parties were endeavoring to accommodate their pleadings—further described the line between the two properties as "passing what is known as Taylor spring at a point where there was at the time of said survey," referring to a survey made by one Jackson, "a plank placed immediately east of or near the water edge in said spring," and more to the same effect. Plaintiff's replication, on the other hand, alleged that the "true boundary line crosses the spring, running across the middle of the spring."

Section 7457, from time to time, has been enlarged by additions to its original form, 2699 of the Code of 1886, for example. On just what considerations a jury may elect to give effect to one of two surveys purporting to start at the same point and run in the same course, or just what the statute in its present form intends, we may as well confess a measure of doubt.

In the Code of 1886, § 2699, reads as follows:

"The defendant may, in an action of ejectment, or in an action in the nature of an action of ejectment, disclaim possession of the premises sued for, in whole or in part, and, upon such disclaimer, the plaintiff may, if he so elects, take issue; and, if the issue be

found for him, he is entitled to judgment as if the defendant had, in an action of ejectment, entered into the consent rule, confessing * * * or, in an action in the nature of an action of ejectment, had pleaded 'not guilty,' admitting possession."

In the present Code (1923) the section, 7457, is framed as follows:

"7457. (3843) (1533) (2699) (2963) (2614) (2213) *Disclaimer of Possession.*—The defendant may, in an action of ejectment, or in an action in the nature of ejectment, disclaim possession of the premises sued for, in whole or in part, and upon such disclaimer, the plaintiff may take judgment or may take issue; and if the issue be found for him he is entitled to judgment as if the defendant had, in an action of ejectment, entered into the consent rule, confessing possession as well as lease, entry and ouster, or, in any action in the nature of an action of ejectment, had pleaded 'not guilty,' admitting possession. The defendant, within pleading time, or within thirty days before the case is called for trial and after notice to the plaintiff or his attorney of record of his purpose so to do, may file his suggestion in writing that the suit arises over a disputed boundary line, in which suggestion he shall describe the location of the true line and thereupon the plaintiff shall take issue, or shall reply in writing in which replication he shall set forth his contention as to the location of the true line, and the court or jury trying the issue shall ascertain the true location of the boundary line, and judgment shall be rendered accordingly, and order the sheriff to establish and mark the true line as ascertained, and in such case the costs shall be apportioned justly and equitably. A single judgment on such issue of the location of the true boundary line shall bar another suit for the location of the same boundary line."

In Wade v. Gilmer (1914) 186 Ala. 524, 64 So. 611, 612, it was held, on the authority of adjudicated cases cited, that "the plea of disclaimer is 'an admission of plaintiff's title, with denial of defendant's possession.' * * * Under such a plea no question of title as to lands so disclaimed is litigable." But here, as in Walden v. McKinnon, 157 Ala. 291, 47 So. 874, 22 L. R. A. (N. S.) 716, and Tabor v. Craft, 217 Ala. 276, both parties are claiming title to a disputed area, the spring, and, unless the award operates on the title, it is meaningless.

Section 6465 of the Code, as amended by the act of 1923, p. 764, provides that:

"The powers and jurisdiction of circuit courts as to chancery or equity matters or proceedings shall extend—

"5. To establish and define uncertain or disputed boundary lines, whether the bill contains an independent equity or not."

And under this section, thus amended, a majority of the court held in Yauger v. Taylor, 218 Ala. 235, 118 So. 271, that the question of title by adverse possession might be tried on a bill in equity to determine a disputed boundary line. And now, in virtue of section 7457, the parties to an action of ejectment may require the court, acting in obedience to the verdict of a jury, to ascertain the true location of a boundary line and to order the sheriff to establish and mark the same. Thus, in cases of this character at least, has the ancient distinction between courts of law and equity and their separate jurisdictions disappeared. The ability of a jury intelligently to pass upon questions of disputed boundary lines may, in general, well be doubted. In this case the jury have found that a line running south from the northeast corner of section 34, the northwest of section 35, four degrees and nine minutes east, will run across the middle of the spring; but the sheriff, aided by a competent surveyor, and bound by the government survey locating the point of departure, may hereafter find that one and the same line cannot be run south, four degrees and nine minutes east, and across the middle of the spring. Then what?

The jury found "the line in question to be as set forth in the plaintiff's replication." This verdict meant that the line between sections 34 and 35 ran across the middle of the spring. This court in Nolin v. Parmer, 21 Ala. 70, held that, "as respects sections of lands, the Government of the United States have fixed their boundaries, and marked their corners and lines, and it is clear that these boundaries, thus marked and established, cannot be altered or controlled by any other survey," but that lines dividing sections into halves and quarters, if erroneous, may be corrected by running them according to law.

My suggestion is that a better judgment, more conducive to ends of right and justice, would have directed the sheriff with the aid of a skilled surveyor to run a line from the northeast corner of section 34, the same being the northwest corner of section 35 south, four degrees and nine minutes east, and report to the court how that line fell in relation to the spring. Nothing to the contrary was said in Mixon v. Pennington, 204 Ala. 347, 85 So. 562.

Assignments of error raise only questions as to rulings on evidence and the court's taxation of costs. As for the rulings on evidence, in so far as the answers sought or elicited may have tended to prove adverse possession, they were of no consequence for the reason that the pleadings on both parts, basing the rights of the parties on the government section line, excluded any issue as to title so lost or acquired, and harmless in any event, since it remains for the survey ordered by the court to answer the inquiry whether or not the line

of the government survey will run across the middle of the spring. In either event the court, responding to the pleadings in this case, will give effect to the government survey. The result of the survey ordered by the court, necessarily involved in its order to the sheriff to establish and mark the line, will disclose what will be a "just and equitable" taxation of the costs which have been taxed in advance against appellant. This was error to reverse.

THOMAS, J., concurs in the foregoing opinion of Justice SAYRE.