192 So.2d 706

**T. R. MILLER MILL CO., Inc.**

**v.**

**J. M. RALLS.**

**3 Div. 139.**

Supreme Court of Alabama.

Sept. 1, 1966.

Rehearing Denied Dec. 8, 1966.

254

B. E. Jones & R. L. Jones and Edwin C. Page, Jr., Evergreen, for appellant.

Prestwood & Prestwood, Andalusia, and Alvin T. Prestwood, Montgomery, for appellee.

**255**

**COLEMAN, Justice.**

From judgment for defendant, rendered on jury verdict in action for trespass to land by cutting timber, the plaintiff appeals.

*Motion to Dismiss.*

Appellee moves to dismiss the appeal on the ground that appeal was not taken within the time allowed by law.

Judgment for appellee was rendered on the 19th day of September, 1962, and appellee contends that appellant was required to appeal within six months thereafter. Appeal was not taken until March 14, 1964.

Within thirty days after rendition of judgment, appellant filed motion for new trial and on October 10, 1962, the trial court continued the motion to the 19th day of November, 1962, on which day the court continued the motion to December 31, 1962.

On December 31, 1962, the cause was submitted on the motion and taken under advisement.

On December 26, 1963, the court overruled the motion.

Appeal was taken within six months after the date of the judgment overruling the motion for new trial.

If a motion for new trial has been duly filed, considered, and overruled, the time limited for taking an appeal from the original judgment dates from the judgment overruling the motion for new trial. Local 204 of Textile Workers Union of America v. Richardson, 245 Ala. 37, 15 So.2d 578; Harden v. United States F. & G. Co., 267 Ala. 321, 101 So.2d 302.

Appellee argues that the submission and taking under advisement of a motion for a new trial operates to keep the motion alive only until the end of the term, citing: Childers v. Samoset Cotton Mills, 213 Ala. 292, 104 So. 641; and Greer v. Heyer, 216 Ala. 229, 113 So. 14.

The two cases last cited were decided prior to amendment of Section 6667, Code 1923; now § 114, Title 13, Code 1940; by Act No. 56, Extra Session 1936, page 32. Prior to amendment, Section 6667 prescribed the dates for beginning and ending of terms of the circuit courts. As amended, the statute provides that the circuit courts shall be open "at all times," and abolishes the matter of terms of court. Williams v. Wicker, 235 Ala. 348, 179 So. 250.

In the *Wicker* case, supra, appellee insisted that a motion for new trial had lapsed because the motion had been carried over into another term, and, therefore, that no valid judgment could be rendered on the motion. This court said that the motion was timely filed and continued to date of submission when it was taken under advisement; that this submission and taking the motion under advisement operated to keep the motion alive until the end of the term, as in Greer v. Heyer, supra, and kept the

256

trial of the motion constructively in progress until judgment was rendered on the motion.

So in the instant case, after the motion was duly continued to the date it was submitted and taken under advisement, the motion was kept alive and the trial of the motion was considered as constructively in progress until judgment was rendered on December 26, 1963, overruling the motion.

The record here contains adequate showing of continuance, submission, and judgment on the motion; Holman v. Baker, 277 Ala. 310, 169 So.2d 429. The time for taking appeal ran from the judgment on the motion, December 26, 1963; and, within six months thereafter, appeal was taken. Because the appeal was taken within the time allowed by law, the motion to dismiss the appeal is due to be and is overruled.

### On the Merits.

Plaintiff sued defendant for cutting trees on the east half of southwest quarter of Section 16, Township 4 North, Range 13 East, in Conecuh County.

Defendant pleaded not guilty. Defendant's contention is that the trees he cut were on his own land, which is the west half of southwest quarter of said section. The disputed question is the location of the east boundary of defendant's eighty acres, that is, the line which divides the west half from the east half of the southwest quarter of Section 16.

The plaintiff formerly owned the entire section 16. In 1923, plaintiff conveyed the west half of southwest quarter of section 16 to E. N. Amos, through whom defendant derived title.

The testimony of plaintiff's president is to the effect that the southwest corner of Section 16 was marked as early as 1911 or 1912; that, in 1923 when defendant's eighty was sold to Amos, the witness sent one George W. Kirkland "to lay out the lines"; that the southeast corner of defendant's

eighty "was set" by Kirkland; that the east line of defendant's eighty has been marked since 1923; that the witness saw that the corner was there; that "the trees were marked to show that the corner was there and they are old marks and there's not any question that that corner was set there in '23 and it's been there until it's been removed recently"; that, in 1951, plaintiff cut timber "right up to that line"; that, in 1951, defendant's mother owned defendant's eighty and sold the timber on it to Anthony Lumber Company, which "recognized the line and cut to the line" that plaintiff had marked; that plaintiff "cut it all" when it sold to Amos; that, after '27, plaintiff went on its own land lying east of and adjoining defendant's eighty to get poles and piling; that plaintiff "stumped" its own land; and that plaintiff's land was cut "up to the line in '51."

Plaintiff's forester testified that he had been looking after "this land" since 1943; that about a year later, Ed Ralls, who was defendant's father as we understand it, took the witness to defendant's southeast corner and showed it to witness; that it "was just a lightwood corner"; that the line was marked up to the northeast corner of defendant's eighty, and the line was never questioned up until the difficulty.

Plaintiff's evidence is to the effect that the trees cut by defendant were trees which stood east of the marked line on a strip of plaintiff's land which was about one hundred forty feet wide lying immediately east of the marked east boundary line of defendant's eighty as contended for by plaintiff.

No witness testified that he had made or had been present at the making of any survey to locate the line marked by plaintiff or the corners at the north or south end of the line.

Plaintiff's forester, Ezell, testified that concrete markers were put at the north and south ends of the marked line in 1951 or 1952. On direct examination, he testified

to effect that he himself placed the concrete markers as follows:

"Q Now this corner there is the one you put there in 1951 is it not? I mean the concrete marker?

"A Yes sir.

"Q The lightwood knot had been there before?

"A Yes sir.

"Q And about the same time did you put the corner at the northeast corner, the concrete marker?

"A Yes sir.

"Q What date was that now?

"A I don't know exactly, along about '51, about the time we were doing that logging in there.

"Q And that southeast corner was plainly marked there at that time?

"A Yes sir and a big pine tree was a witness there.

"Q Did you put both of those corners where the old corners were?

"A Yes sir."

On cross-examination, however, Ezell testified as follows:

"Q Now did you put those concrete markers down yourself?

"A No sir I wouldn't say I put them down myself, I said they was put down in 1951 I thought.

"Q Then you don't know who put them down?

"A Yes sir I think I know but I wouldn't be positive about that, I think Hilton Riggs put them down. Anyway they was put down when we was logging in there in '51.

"Q Well did you have anything to do with them being put down?

"A I made the corners.

"Q Did you instruct anybody to put them down?

"A I wouldn't say specifically.

"Q Well what is it you say specifically about them now that Mr. Page is offering in evidence?

"A I say they are right where the old corners were and if you look you'll see the old corners by them. They was put right on the old line.

"Q But other than that you don't know who put those corners down do you?

"A I would say that Hilton Riggs put them down and I'd say that Mr. Broox Lambert told him to put them down when we was logging, at that time Mr. Broox Lambert was superintendent of logging.

"Q Are you testifying to facts or are you guessing about what Mr. Broox Lambert told him?

"A I know when they put the corners down up there, it was when we was doing our logging in there.

"Q Did you see them while the logging was going on? After they were put down?

"A I wouldn't say, I saw them a lot of times, but I wouldn't say that.

"Q Did you put one down on the northwest corner of this eighty? A concrete marker?

"A There's one on the northwest corner but I wouldn't say I put it there.

"Q Do you know Mr. Sadie Mathews?

"A Yes sir.

"Q Didn't you put one there between his land and the Ralls land—where the Ralls land and the Mathews land join?

"A I understand we have one there but I don't remember putting it there.

"Q   In your best memory you did not?

"A   That's right, I don't remember.

"Q   And you don't know who did?

"A   No sir I don't know who put it there, I don't remember doing it."

In 1960, defendant employed Ralph Powell, County surveyor for Conecuh County, to survey the east line of defendant's eighty. The surveyor testified that he began at government corners of adjacent sections and established the correct east line of defendant's eighty by "government proof," that is, according to the markers that government surveyors set when the land was originally surveyed from 1820 to 1823. This line we refer to as the Powell line. It seems to lie about one hundred forty feet east of the marked line claimed by the plaintiff. The trees cut by defendant were in the strip between the two lines.

### Error 3.

Plaintiff's assignment 3 is that the court erred in overruling plaintiff's objection to defendant's Exhibit 4 which is a map or plat made by Powell showing his survey and the Powell line. Plaintiff's argument is stated in brief as follows:

"   .   .   .   .   The Appellant earnestly insists that since the survey was not made until about March of 1960, 60 to 90 days prior to the timber cutting in contest, and that since the line between the parties had been established and agreed on for more than twenty years, that this survey was irrelevant and immaterial to the case and could not sustain the defendant's case. This position is the very heart of our case. We insist that this company has had indisputed possession of all that part of the West Half of Section 16, Township 4 North, Range 13 East, except the eighty acres described as belonging to the defendant, and as described in the complaint, the East line of the defendant's eighty acres having been established by George Kirkland, woodsman and surveyor for the Appellant, in the year 1923 when the Appellant sold the property to E. N. Amos, and that this action, with the agreement and knowledge of E. N. Amos and his successors in the title, and the abiding by it by each party, has irrevocably and irretrievably established the boundary line on the East side of the defendant's eighty acres and that he cannot at the late date depicted in this suit change that line by a survey beginning at the Southwest corner of Section 29, running East a mile, and thence North 2 miles, and thence around the eighty acres in question, and find that these new lines are the valid lines and that this Appellant must abide by them.

.   .   .   .

"   .   .   .   .   .   .   .   .

"   .   .   .   .   We further insist that the survey by Ralph Powell was immaterial and irrelevant, as the survey could only determine the true government line and the parties had already established a line of their own regardless of the true government line, and the decisions of this Court cited bear us out in our contention."

█   We do not understand how the plaintiff can, by evidence which tends to establish its case, render inadmissible evidence which tends to establish defendant's case. There is no evidence that Powell was not a qualified surveyor or that his survey was incorrect in any particular. Defendant claims to own to the east boundary of the west half of the southwest quarter of Section 16. Powell's survey was relevant to establish the correct location of defendant's east boundary.

"The authorities are agreed, in such controversies, that any testimony tending to show the location of the line as established by the government survey is admissible, and the parties are not limited to the expediency of having the line established by a surveyor. 'In cases of disputed boundary, all evidence, whether

documentary or parol, which bears upon the point in issue and which is not inadmissible on general principles, may be received in evidence, including records of original proprietors, their plans and maps and the location of lands by ancient settlers.' (Citations Omitted.)" Pounders v. Nix, 222 Ala. 27, 28, 29, 130 So. 537, 538, 539.

"Our cases adopt the rule that a survey and a map based thereon are admissible in evidence where the county surveyor who made the survey and the map is shown to be qualified and is personally present in court, subject to cross-examination by the opposite party, and testifies as to the correctness of his map." Golden v. Rollins, 266 Ala. 640, 644, 98 So.2d 409, 413.

To be admissible, the survey must not be subject to any proper objection that it offends some rule of evidence, but we do not know of any rule which is offended by the Powell survey. Defendant had a right to introduce evidence which tended to show that the trees he cut were on his own land and the Powell survey tended to support defendant's contention. We are of opinion that the court correctly overruled plaintiff's objection to Powell's survey.

### Error 4.

Plaintiff assigns that the court erred in permitting the introduction into evidence, over plaintiff's objection, of a certain letter purporting to have been written by defendant to plaintiff's president.

Plaintiff's objection to the letter was stated to the trial court as follows:

"If the Court please we object to that— that's in reference to the survey and we contend that all testimony in reference to the survey is not legal."

Plaintiff now says that the letter was not admissible because it is a self-serving declaration by defendant and, therefore, defendant cannot introduce the letter into evidence.

■ The general rule is that self-serving declarations in a letter which was not answered cannot be treated as admitted because the letter was not answered. Fidelity & Casualty Co. of New York v. Beeland Bros. Mercantile Co., 242 Ala. 591, 594, 7 So.2d 265.

■ The mere self-serving declaration of the plaintiff in a letter to defendant, which defendant does not answer, is ordinarily not admissible against the defendant, "if a proper objection be directed to that portion of the letter." Hannon v. Espalla, 148 Ala. 313, 320, 42 So. 443.

As defendant points out, however, plaintiff did not base its objection to the letter on the ground that the letter was a self-serving declaration. The only ground assigned in the trial court is that the letter is "in reference to the survey" and "all testimony in reference to the survey is not legal."

There is only one survey shown by evidence in this case and that is the Powell survey. We have already stated our reasons for holding that evidence showing the Powell survey is admissible in this case. We are of opinion that the letter was not inadmissible on the ground that the letter was in reference to the survey.

Many decisions of this court support the rule of review which applies when specific objection to evidence is made and overruled. In an early trial of the right of property, the claimant offered in evidence a certain agreement and note. Plaintiffs objected to the same being read to the jury because plaintiffs had no knowledge of the agreement or note. Plaintiffs lost on the trial and sued out a writ of error in this court where plaintiffs contended that the agreement and note were incompetent because "their execution was not proved." In affirming the judgment this court said:

"The first point made by the counsel for the plaintiff in error, is not, in our opinion, presented upon the record. It has been repeatedly held, that a party

complaining of error in the judgment of the primary Court must present it distinctly upon the record, and that in doubtful cases every reasonable presumption and intendment will be made in favor of the judgment of the Court. This is a salutary and just rule, imposing no hardship whatever on the party supposing himself aggrieved, whilst the contrary doctrine would be productive of great mischiefs and would constantly lead to the reversal of judgments for supposed errors, which had not in fact been committed. If the objection here was that there was no proof of the execution of these instruments, the point should have been distinctly made in the Court below. But in addition to the want of a specific objection, such as is raised here, the record itself shows what the true point intended to be raised was. The plaintiff had proved the possession by the defendant in execution of the property levied on, after the purchase by the claimant, down to the time of the levy by the plaintiffs. To repel the presumption which the law makes in such a case, the note and agreement were offered by the claimant, to the introduction of which the plaintiffs objected, because they had no knowledge of them. This then is the precise point raised in the Court below, and is in effect an admission that in other respects these instruments were competent as testimony. We are clear in the opinion that the objection now made is not presented upon the record." Creagh v. Savage, 9 Ala. 959, 961, 962.

In another early case where the trial court had overruled objection to evidence, this court said:

" . . . . the sole ground of the objection is that the witness could not state the time and place when and where these declarations were made by Walker, *nor who was present,* except only the statement made at Walker's house, further than that they were made between the years 1837 and 1843. We must, therefore, confine ourselves to this ground of ob-

jection; for it is the well settled rule that if evidence be objected to for specific reasons or grounds stated by the party objecting, we can only examine whether those reasons or grounds render the evidence illegal. (Citation Omitted.) Indeed, the specification of the grounds of objection to testimony must be considered as an admission that the evidence in other respects is legal; otherwise, the party objecting might frequently reverse a judgment on a point never decided in the court below, and which, if presented, the other party might have avoided by waiving the testimony objected to, or rendering it competent by the introduction of other proof. Looking then to the ground of objection alone raised in the court below, there was no error in refusing to exclude the testimony. . . ." Walker v. Blassingame, 17 Ala. 810, 812, 813.

Many citations supporting this rule may be found in Alabama Digest, Appeal & Error, ☜ 232(1).

Among later cases supporting the rule that this court, in reviewing rulings on evidence will consider only the grounds of objection which were assigned in the trial court, see: Marigold Coal, Inc. v. Thames, 274 Ala. 421, 424, 149 So.2d 276; Granberry v. Gilbert, 276 Ala. 486, 163 So.2d 641; Danley v. Marshall Lumber and Mill Co., 277 Ala. 551, 556, 173 So.2d 94; Circuit Court Rule 33.

■ In the case at bar, plaintiff did not assign, on the trial, the ground of objection that the letter was a self-serving declaration. Plaintiff, therefore, waived that ground and cannot raise it now.

We are of opinion that assignment 4 is without merit.

### Errors 1 and 2.

Plaintiff's assignments 1 and 2 are that the court erred in refusing affirmative charges, with hypothesis, requested by plaintiff.

Plaintiff says in brief:

"We reiterate that the testimony in this case is sufficient to support title in the Appellant by prescription, on its possessory period of more than twenty years. This cannot be questioned as there is absolutely no testimony in the case except that of the posting of trespass sign by Ed Ralls, the father of the defendant, beginning in 1936 or 1937, until the oak timber cutting by Grady Ralls in 1950, or for a period of twenty-seven years from the establishment of the line in 1923."

■ In civil cases, the question must go to the jury if the evidence or the reasonable inferences arising therefrom furnish a mere gleam, glimmer, spark, the least particle, the smallest trace, a scintilla, in support of the theory of the opposing party. Alabama Great Southern R. Co. v. Bishop, 265 Ala. 118, 123, 89 So.2d 738, 64 A.L.R.2d 1190.

■■ In considering assignments 1 and 2, we are required to view the evidence in the light most favorable to defendant. Before plaintiff is entitled to the affirmative charge with hypothesis, the evidence against defendant must be clear, without conflict, and must leave nothing to be done except to draw a legal conclusion from the facts. Randolph v. Greason, 275 Ala. 89, 91, 152 So.2d 156.

Even if plaintiff be correct in saying that there is evidence sufficient to support plaintiff's claim of title by prescription, we think such evidence is not without conflict. We think there is material evidence which conflicts with plaintiff's claim as to the existence of the marked line to which plaintiff claims and as to the prior cutting of timber in relation to plaintiff's claimed line.

The land here is woodland, wild land, used for production of timber and turpentine stumps. Plaintiff's acts tending to show possession consist of cutting timber and removing stumps. Plaintiff claims that there is a plainly visible line marked by hacks and blazes on trees thirty or more

years old. There is evidence which denies the existence of plaintiff's claimed line and concrete markers. Defendant is sometimes referred to as Mutt Ralls. Powell testified:

"Q   As you went east from that southwest corner did you pass any marked line or see any line?

"A   When I went east from the southwest corner?

"Q   Of section 16 on the south side, you said you ran a mile—did you run across any former line or marking on that line?

"A   I ran down a former line that had been run so it was purported to me by Mr. Sam Sowell. I ran down that line and proved the quarter section corner and the section corner, and I was told that Sam Sowell ran the line, I didn't see him do it.

"Q   Did you see—I believe you testified before that you didn't see any hacks or blazes or any marked line any time except your own line on this particular place?

"A   On that particular place I only found one line, that was from the southwest corner of the Mutt Ralls property running east.

"Q   Now that's down the section line?

"A   Yes.

"Q   I'm asking you as you went down that line did you come to any line that ran north and south on the east boundary line?

"A   Not on the Mutt Ralls property I didn't.

"Q   Did you run by a concrete corner or anything like that marking another line on the east side of that?

"A   Not on the Mutt Ralls property.

"Q   And if there was a corner there, a concrete marker such as this, you didn't get close enough to it to see it?

"A If there was one there it was not on the Mutt Ralls property.

"Q Now that was the first time you'd been on the Mutt Ralls property?

"A I had been on the Ralls property but not on the Mutt Ralls property.

"Q That's what I'm asking you. And while you were up there did you see a north and south line running some one hundred and forty feet west of the line you ran north and south as the east boundary line?

"A When I came across from the southwest corner of section 29 and turned north there was a line, there was some blazes and hacks there that were erratic, looked like somebody had run a pocket compass on it.

"Q I'm talking about the east line of the Mutt Ralls property?

"A No sir, not on the Mutt Ralls property.

"Q You never have seen any hacks and blazes up that line except the ones you put have you?

"A On the east line of the Mutt Ralls property?

"Q Yes.

"A No sir, except the ones I put there.

"Q You testified before that you never saw any,—

"A I saw some there after I put mine there.

"Q Were they fresh ones?

"A They looked fresh, they had just been painted.

"Q Some had been put there after you set up your line, you come over a hundred forty feet and found a line that had been there since you were there?

"A No I didn't go a hundred forty feet looking for anything, I don't know what that distance was, but I rode down passed there and I found a freshly blazed and hacked line but it was not there when I surveyed Mutt Rall's property.

"Q And you know there wasn't any blazed and hacked old line running some hundred and forty feet west of where you ran yours?

"A Mr. Jones the way I understand the old line is the government survey,— any line since then of course is a new line.

"Q Whether you call it old or new I'm asking you, if you saw any line, hacks and blazes some hundred and forty feet or approximately that distance west of where you put your north and south line?

"A Not at the time of my survey, after that when I rode down that road I saw a freshly painted line.

"Q Now would you tell this jury there wasn't one there prior to this fresh line you saw?

"A Not to my knowledge.

"Q And you didn't see these concrete markers—

"A There were no concrete markers on the Mutt Ralls property.

"Q And you didn't even get close enough going east and west to see any marker like that at the southeast corner of the Mutt Ralls land?

"A I saw a concrete marker, but there was none on the Mutt Ralls property. I saw two or three of them out there, but none on the Mutt Ralls property."

The plaintiff claimed that since 1923, whenever any party cut timber on defendant's land, such party stopped cutting at the line claimed by plaintiff. Plaintiff offered the testimony of C. B. Faisen who testified that in 1952 he worked for An-

thony Lumber Company, that he, Faisen, was in charge of cutting the timber on defendant's eighty. Plaintiff's president testified that Anthony recognized and cut to the line that plaintiff had marked.

Defendant testified to the contrary. Defendant testified:

"Q And you worked for the Anthony's during that cutting didn't you?

"A I sure did.

"Q And they had a man named Faisen that was looking after the operation didn't they?

"A Yes sir.

"Q And you heard his testimony that he cut up to this first old line and that's ten years before Mr. Powell put his there, and stopped at the line? Now was Mr. Faisen lying?

"A Mr. Faisen cut up to this same line where Ralph Powell run right about the same line."

Defendant gave testimony that the line and markers claimed by plaintiff did not exist, to wit:

"Q Did you know anything about there's been right there since 1951, by their testimony, a concrete post at the north end, one at the south end, of this line that they claimed on the east side of yours?

"A There ain't never been but two cement corners down there and one of them is between me and Mr. Sadie Mathews that Mr. Ezell put in—the company hasn't even got any land there and the other one is up there on the section line going east on the section where my *forth* joins—let this jury go down there, that's what I want.

"Q Haven't you been out there hunting around since 1951 and isn't there a concrete marker like that at the north end of the line they are claiming and another one like it at the south end?

"A No sir ain't one like it at the south end, now there's one like this over there where—between me and Mr. Mathews.

"Q Did you hear Mr. Ed Leigh McMillan testify that there's a concrete marker at the south end and one at the north end and it's marked out all the way through there?

"A There's not but two down there anywhere that I've ever seen.

"Q You haven't seen any corner that's on the south end of that line nor the north end of that line, nor the hacks or blazes between them?

"A Ain't but one thing I can tell you— let's just drive down there and look at it.

"Q I'm just asking you have you seen that?

"THE COURT: Answer his question Mr. Witness.

"A I ain't never seen but two cement corners down there.

"Q I'm asking about these two specific ones—that your cutting went on a hundred and forty feet beyond. Did you see one at the south end, one at the north end and a line of hacks all the way between them?

"A No siree.

"Q And you tell this jury there wasn't any such thing there?

"A No there ain't."

■ We are of opinion that, because there are material conflicts in the testimony, plaintiff's requested affirmative charges with hypothesis were refused without error.

### Error 5.

Plaintiff's assignment 5 is that the court erred in overruling plaintiff's motion for new trial. Plaintiff seems to argue that the court erred in overruling the grounds of the motion which assert that the verdict is contrary to the great preponderance of the evidence.

■■■ When the presiding judge refuses to grant a new trial, the presumption in favor of the correctness of the verdict is strengthened. Ditsch v. Baggett Transportation Co., 258 Ala. 26, 29, 61 So.2d 98.

■■■ A verdict is not to be set aside merely because it may not correspond with the opinion of the court as to the weight of the testimony, or because it is against the mere preponderance of the evidence. Locklear v. Nash, 275 Ala. 95, 98, 152 So.2d 421.

■■■ There was material conflict in the evidence and we are of opinion that the motion for new trial was overruled without error.

Error not being shown, the judgment is due to be and is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.

### ON REHEARING

COLEMAN, Justice.

On application for rehearing, plaintiff says that we "erred in ruling" that it had not acquired title by adverse possession up to the line laid out in 1923 "regardless of the true government line between the West Half of the Southwest Quarter of Section 16" and plaintiff's land.

We did not "rule" whether plaintiff had acquired title or not. We did say that the question was for the jury.

Defendant's defense was that he owned the west half of the southwest quarter of section 16 and that he was not liable for the trees he had cut because they were his own trees on his own land.

Plaintiff itself introduced into evidence a deed which showed that it had conveyed the "West Half of Southwest Quarter (W ½) of (SW ¼) of Section Sixteen (16) . . . ." to E. N. Amos. It seems to be conceded that defendant had acquired the title which plaintiff conveyed to Amos. Defendant sought to show the location of the east boundary of his land. The deed from plaintiff to Amos described the land so that defendant's east boundary would be the true east boundary of the west half of the southwest quarter of section sixteen. Defendant introduced the Powell survey to show the location of the true east boundary of west half of southwest quarter of section sixteen. Plaintiff does not even now, if we understand its brief, say that the line shown by the Powell survey is not the true east boundary of the west half of southwest quarter of section sixteen. We think defendant had a right to introduce relevant, competent evidence to prove his theory of the case. The survey was admissible as such evidence.

Plaintiff's theory, as we understand it, is that the property line between plaintiff and defendant is not the true east boundary of the west half of southwest quarter of section sixteen, but is a line marked by plaintiff in 1923 when the deed to Amos was made. Plaintiff contends that it has acquired title up to this marked line by adverse possession. Plaintiff contends that its line was plainly marked for over thirty years, that defendant's predecessors agreed to the line, and that plaintiff has exercised dominion and has had possession up to this line since plaintiff marked it in 1923.

Plaintiff's president testified:

"Yes sir, I saw it there, there's not any question that the line has been there, that the corner has been there—the trees were marked to show that the corner was

there and they are old marks and there's not any question that that corner was set there in '23 and it's been there until it's been removed recently."

Other witnesses for the plaintiff testified to the same effect.

In answer to plaintiff's contention, however, defendant says plaintiff has not acquired title to the line claimed by plaintiff and that the marked line claimed by plaintiff did not exist. As we undertook to point out on original deliverance, the surveyor, Powell, and defendant himself, testified that the line claimed by plaintiff did not exist. We do not understand how the jury could accept as true the testimony of all of plaintiff's witnesses and all of defendant's witnesses. Plaintiff's witnesses testified that the line and corners claimed by plaintiff were marked in 1923, and, as we understand the testimony, that the markings were plainly visible until defendant, in 1960, cut the trees for which he is now sued. On the other hand, defendant's witnesses say no such line existed.

If the jury had been instructed to find for the plaintiff if they believed the evidence, how would the jury have known which evidence to believe? They could not believe both versions. They had to accept one version and reject the other. For that reason, the court did not err in refusing plaintiff's requested affirmative charges with hypothesis.

Plaintiff correctly says that we did not even mention the cases cited by plaintiff in its original brief to support its Proposition 3, that, if two coterminous owners agree on a boundary and each occupies to it, the possession is presumed adverse and, after ten years, fixes such line as the boundary between such owners. We carefully read all the cases cited in all plaintiff's briefs but we saw no reason then, and see none now, to mention any cases relating to plaintiff's Proposition 3 because the correctness of the proposition was not disputed.

We will refer to one case cited by plaintiff on rehearing, to wit, Chastang v. Chastang, 141 Ala. 451, 37 So. 799, for a proposition which, perhaps, we did not clearly express in the original opinion. That proposition is that " . . . . the party claiming to hold adversely must show by some evidence that he is holding the particular piece of land to which he claims title, and to show that, there must be some evidence showing the exact boundaries of the land claimed by him." In *Chastang,* this court reversed for the error, among others, of refusing the affirmative charge requested by defendant because " . . . . the entire evidence in this case was wanting; 1st, in pointing out definitely the land which was claimed to have been adversely held . . . ."

In the case at bar, plaintiff claimed, by adverse possession. To prove its claim, plaintiff had the burden of offering evidence to show the exact boundaries of the land claimed by plaintiff. Plaintiff did offer evidence to show such a boundary. Plaintiff offered evidence that there existed a plainly marked line to which plaintiff claimed to have had possession. Defendant, however, offered evidence contradicting plaintiff's evidence. Defendant's witnesses testified that the line claimed by plaintiff did not exist. Because the contradictory evidence as to existence of the line clearly presented a question for the jury, if for no other reason, the court did not err in refusing plaintiff's requested affirmative charges.

After fully considering plaintiff's application we are not persuaded that we ought to disturb the judgment appealed from.

Opinion extended.

Application overruled.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.