Lee B. Williams, Patricia H. Williams, and Sarah Ruth Williams, owners of a tract of real property located in Washington County that is adjacent to a tract owned by Laubenthal Land Timber Co. ("LL T"), appeal from a judgment entered by the Washington Circuit Court in an action brought by LL T seeking the ascertainment of the boundary line between the tracts.
LL T initiated the action in May 1998 by filing a complaint in which LL T alleged that it owned property described as "[a]ll of Section 30, except Harris Lands, Township 5 North, Range 1 East" and the "North Division of Section 41, Township 5 North, Range 1 East." LL T alleged that the Williamses owned "Section 36, Township 5 North, Range 1 East, also known as the Wyche Watley Claim . . . less 8 acres on the West side thereof." The complaint further averred that the boundary line between the parties' tracts "ha[d] been maintained and recognized by the[ir] predecessors in title . . . for more than twenty years along a blue painted line." Apparently in the alternative, LL T alleged that it had been in "adverse possession" of lands up to the blue line in excess of 20 years. Asserting that a dispute had arisen concerning the correct boundary line, LL T requested that the trial court establish the "blue painted line" as the boundary between the tracts. The Williamses' answer, filed immediately before trial in 2004, admitted that they were *Page 303 
"the owners of Section 36, Township 5 North, Range 1 East, less and except eight (8) acres on the western border thereof but denied the remainder of the averments in the complaint.
During discovery in January 2000, the Williamses propounded an omnibus layand expert-witness-disclosure interrogatory to LL T seeking "the name and address of each person, including experts, having any knowledge of relevant facts." The Williamses also asked whether any surveys had been made "of a part or all of the boundaries of the property" and requested that information regarding any such surveys be disclosed and a copy of such surveys be produced. LL T made initial responses to those interrogatories and requests in May 2000, identifying 11 witnesses and one recorded survey. In May 2004, approximately one month before trial, LL T supplemented its response to the witness-disclosure interrogatory, identifying Gregory C. Spies, a surveyor from Coden, Alabama, as an expert witness; however, at that time, Spies had apparently not prepared documentation of his surveying work as to the location of the boundary line. Notably, the Williamses did not take Spies's deposition before trial.
When the trial commenced, counsel for LL T announced that it was "not claiming adverse possession across the Section line" and stated that "[t]he real issue in the case is where the Section line is." Counsel for the Williamses moved to exclude from evidence a plat that Spies had prepared; the motion to exclude was based upon the delay in production of the document by counsel for LL T until immediately before the trial. In response, counsel for LL T averred that he had given the Williamses' counsel a copy of the plat "[a]s soon as I got it, which was this morning," i.e., the morning of the trial, and Spies confirmed in his testimony that he had provided a copy of the plat to counsel for LL T only on the day of the trial. The trial court permitted Spies to testify and allowed Spies's plat into evidence.
After an ore tenus proceeding, the trial court entered a judgment determining the north and east boundary lines of Section 36, i.e., the section lines that formed the true boundary line between the tracts. The section boundary lines set forth in the judgment were in accordance with lines endorsed by Spies and another surveyor, Milton Schell, and advocated by LL T. The Williamses appealed after their Rule 59, Ala. R. Civ. P., motion had been denied; the Alabama Supreme Court transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
We note that a judgment establishing a boundary line between coterminous landowners on evidence submitted ore tenus is presumed to be correct and need only be supported by credible evidence and that, if that judgment is so supported, the trial court's judgment will not be disturbed on appeal unless plainly erroneous or manifestly unjust. Todd v. Owens,592 So.2d 534, 535 (Ala. 1991). The presumption of correctness is "especially strong" in boundary line dispute cases "because it is difficult for the appellate court to review the evidence in such cases." Id.
The first contention asserted by the Williamses is that the judgment is not supported by the evidence. Seizing upon the reference in the complaint to "adverse possession," the Williamses contend that LL T was required to prove hostile, notorious, open, continuous, and exclusive possession of the lands up to the blue line by "clear and convincing evidence." That contention overlooks the request in the complaint that the trial court ascertain and declare the true boundary line between the properties and the concession at trial by *Page 304 
LL T (made before evidence was received) that LL T was not claiming adverse possession of land across the section line. It is settled that when adverse possession is not an issue, and adjacent landowners, as here, claim lands defined in terms of government section numbers, "the controlling inquiry is as to the location of the line in dispute by the government numbers." O'Rear v. Conway, 263 Ala. 466, 467,83 So.2d 65, 65-66 (1955); see also Dial v. Bond, 849 So.2d 189,191-92 (Ala.Civ.App. 2002) (when land is described in a deed by government numbers, the deed does not purport to convey an area outside of such described land). By disclaiming adverse possession, LL T removed from the case any issue other than ascertainment of the proper boundary lines; thus, LL 
T had no "burden of proof to meet in order to warrant a judgment in its favor. As the Supreme Court noted in Ray v.Robinson, 388 So.2d 957, 962 (Ala. 1980), both the plaintiff and the defendant in a boundary-line dispute "will necessarily proffer evidence on that ultimate issue; however, neither party carries the burden of proving the true location of the line by a preponderance of the evidence."
With that principle in mind, we now turn to the central question presented by the Williamses' appeal: Are the boundary lines found by the trial court adequately supported by the evidence? We must answer that question in the affirmative. As the complaint indicates, LL T holds the title to property located in Washington County and described as portions of Section 41 and Section 30, Township 5 North, Range 1 East; those two tracts have been held by LL T or by its individual principals since 1919. The bulk of Section 36 has been owned by one or more of the Williamses since 1975. The record reveals that each tract at issue is located in close proximity to the Tombigbee River and that each party's chain of title ultimately derives from "private preemptive claims" that predate both Alabama's statehood and United States sovereignty over the land in question.
The process by which lands located in that portion of Washington County were officially surveyed, compared to the process undertaken in other areas of Alabama, can charitably be described as irregular. One of the surveyors called to testify by LL T, Milton Schell, testified that the official survey undertaken in the pertinent area of Washington County relied upon documentation produced by land-owners who had made "private preemptive claims" and upon stepped-off measurements. According to Greg Spies's testimony, during the first decade of the 19th century, federal land commissioners adjudicated the validity of preexisting land claims and claimants paid for a government survey to be undertaken; the official public-land survey in the area, which did not take place until 1843, simply relied upon the preemption lines in classifying section boundaries. The official surveying process undertaken thus rendered the resulting section classification anything but uniform. For example, the record reveals that although Section 30 is basically rectangular in shape, the northeast corner of the rectangle formed by extension of the section's northern and eastern boundaries actually lies in a wholly different section (Section 16). Without belaboring the unlikelihood of such conditions existing in other Alabama townships, suffice it to say that in this case the bulk of the southern border of Section 30 is also the northern border of Section 36 and the bulk of the western border of Section 41 is also the eastern border of Section 36.
Marion Laubenthal, the president of LL T, testified that he had been familiar *Page 305 
with the lands in question for the preceding 50 years. Throughout that period, Laubenthal testified, the borders between the two LL T tracts and the Williamses' tract had been marked by a painted blue line. Laubenthal also testified to the existence of a marker that was located at the southeast corner of Section 36 and an ironwood tree marked with the letter "X" and by blue paint that was located at the northeast corner of Section 36. He added that the first indication he had received of a dispute regarding the boundary lines between the parties' tracts had been a 1995 letter from Lee Williams "taking exception to the lines." In addition, Thomas Randal Williams, who has worked for a company that holds rights to hunt on LL T property, testified that the blue line had existed since 1964, and Jim Heath, a forester, testified that he had located and repainted boundary markers on the northwest and southeast corners of Section 36 when he had repainted the blue boundary line on two occasions 10 years apart. Also, Emory Mosley and Roland Bishop, who work in the logging industry, both testified that they had observed the blue painted lines when harvesting timber from the Williamses' tract.
Milton Schell, one of two surveyors called by LL T, testified that he had prepared a plat based upon the landmarks he observed on the disputed property and government-survey field notes he had obtained. He testified, among other things, to the existence of a pipe appearing at the southeast corner of Section 36 and to the presence of a blue painted line along the eastern and northern borders of Section 36. The other surveyor called by LL T, Greg Spies, testified that he had been employed to verify the results of Schell's survey and to prepare a plat; Spies confirmed that Schell's survey was valid. Spies testified that, based upon his examination of the lands in question, the original field notes describing the property that would ultimately be identified as Section 36 and later conveyed in large part to the Williamses contained an erroneous set of directional calls from that section's point of origin, which was the northwest corner of the property that would ultimately be identified as Section 41 (part of LL T's tract). Spies opined that the monuments he had located indicated that Section 36 was properly found by initially proceeding west from the field notes' point of origin rather than east; further, he opined that it would be improper surveying protocol to begin a survey of Section 36 based upon the opposite,i.e., the southwest, corner, as the surveys relied upon by the Williamses did.
In Pounders v. Nix, 222 Ala. 27, 130 So. 537 (1930), the parties, like the parties in this case, disputed the precise location of a boundary line that also happened to be a governmental section line; although they agreed that the section line was the boundary line, they differed "as to the location of the line where it passe[d] [a] spring; that is, whether it passe[d] immediately east of the spring at the water's edge, or at or near the center of the spring." 222 Ala. at 28,130 So. at 538. The Supreme Court held in that case that "anytestimony tending to show the location of the line as established by the government survey is admissible" and that "`[w]here the location of section lines, or their subsidiaries, is in dispute, a witness who is not an expert surveyor may testify to existing and visible lines and monuments which have been adopted or assented to by adjacent owners.'"222 Ala. at 28-29, 130 So. at 538-39 (quoting Deal v.Hubert, 209 Ala. 18, 19, 95 So. 349, 350 (1923)) (first emphasis added; second emphasis original). Thus, the lay witnesses' testimony concerning the location and duration of the blue painted line along the boundaries of LL T's tract, *Page 306 
coupled with the surveyors' testimony concerning the concurrence of that line with the true location of the section line that forms the boundary between the parties' tracts, amounts to substantial evidence that supports the trial court's judgment.
The Williamses also contend that the survey documents prepared by Spies should not have been admitted into evidence because, they say, those documents were not timely produced in response to a request for surveys of the boundaries of the tracts in question. However, whether to admit testimony or documentary evidence that may not have been properly disclosed during discovery is within the sound discretion of the trial court, and the decision of the trial court will not be reversed absent a palpable abuse of that discretion.[1] Coastal Lumber Co.v. Johnson, 669 So.2d 803, 811-12 (Ala. 1995) (testimony); and Lindsey v. Watson Van Lines, 722 So.2d 774, 777
(Ala.Civ.App. 1998) (documents).
We note that counsel for LL T stated on the record that he himself had received the survey documents from Spies only on the morning of the trial, that Spies had been named as an expert witness one month before trial in a supplemental response to the Williamses' interrogatories, and that the record does not reflect any attempt by the Williamses to depose Spies or to move for a continuance to conduct such a deposition in response to receiving the survey documents. As the Supreme Court noted inCoastal Lumber, such a failure to request a continuance could have suggested to the trial court that the Williamses were satisfied that through cross-examination and submission of their own evidence, they could discredit Spies's survey and his testimony thereon. 669 So.2d at 811. The trial court could properly have concluded in this case (1) that LL T, having supplemented its interrogatory responses to reveal Spies's identity as an expert witness, had acted in good faith; (2) that the survey documents in question were not received by counsel for LL T from Spies until just before the trial and could not have been provided to counsel for the Williamses any sooner than they were; and (3) that the Williamses were sufficiently confident in the strength of their case not to seek a continuance upon receiving Spies's survey documents. As a result, the admission of the survey documents was not an abuse of discretion.[2]
Based upon the foregoing facts and authorities, the trial court's judgment is due to be affirmed.
AFFIRMED.
CRAWLEY, P.J., and THOMPSON and BRYAN, JJ., concur.
MURDOCK, J., concurs in the result, without writing.
[1] Indeed, in the sole authority cited by the Williamses as to this issue, Nash v. Cosby, 574 So.2d 700 (Ala. 1990), the trial court's decision to exclude testimony from an expert not identified as required by a pretrialorder was affirmed on the basis that the exclusion of that testimony amounted to a `matter of discretion not subject to reversal.'" 574 So.2d at 702 (quoting Super ValuStores, Inc. v. Peterson, 506 So.2d 317, 338
(Ala. 1987)).
[2] Our conclusion as to this issue obviates the need to consider whether Spies's survey findings were merely cumulative of evidence adduced by Schell, an argument advanced by LL 
T but disputed by the Williamses in their reply brief. *Page 307